Jasen, J.
This case presents the issue of whether spontaneous statements made to the police by a defendant who has been advised of his constitutional rights are rendered inadmissible solely because the defendant is in custody and represented by counsel who is not present when the statement is volunteered.
As the result of a telephone call received from defendant’s attorney, two detectives went to the Stratford Arms Hotel at 117 West 70th Street in Manhattan shortly after midnight on *141 July 6, 1965. There they discovered the body of a 13-year-old boy in defendant’s room. Death had been caused by strangulation.
The detectives then proceeded to Bellevue Hospital in Manhattan where defendant’s attorney and his father surrendered defendant to the officers. Defendant’s attorney informed Detective McNally that he had counselled defendant concerning his constitutional rights, and had advised defendant not to make any statements. Detective McNally then inquired if the attorney desired to accompany defendant to the police station. After receiving assurances that his client would not be mistreated, defendant’s attorney “ stated that he did not think it was necessary; that it was getting late and he would see [Detective McNally] in court in the morning.”
After informing defendant that he was being arrested ‘ ‘ for the homicide of the boy that we found in the bed in 117 West 70th Street ”, the detectives placed him into their car to drive to the police station. Almost immediately after entering the car and without being asked a single question, defendant blurted out, “It’s all a mistake, but I know he forgave me. He’s in heaven now. It didn’t have to happen. I’m sorry I ever met him in the village.” The defendant repeated this statement several times and then began to discuss meeting the deceased. At this time Detective McNally informed defendant, “ You know, you don’t have to make any statements. Your lawyer has already apprised you of that fact.” Defendant replied, "I have nothing to hide. It was all a mistake. I know I’m forgiven. I want to tell my side of the story, and I want to leave it up to the courts and doctors to decide. ’ ’ At the time defendant made this statement, the detectives had just started their car and defendant’s attorney was standing within 30 feet of the police car.
Detective McNally then said to defendant, “ If you don’t mind telling us the story, why don’t you tell us from the beginning.” Defendant then related how he choked and beat the deceased 13-year-old boy to death. Following the death of the boy, defendant remained with the body for two days. Defendant then called his attorney, and was taken by his attorney to Bellevue Hospital where he was arrested.
*142 Detective McNally informed defendant three or four times during relation of the confession that defendant was entitled to the assistance of counsel and did not have to speak to the police. However, defendant insisted upon talking, replying, “ I want to fell you everything.” Defendant spontaneously repeated the confession five or six times. The only questions the detectives asked defendant during his narrative related to the times and dates of events which he had previously described.
After arriving at the 20th Precinct Station House, defendant was readvised of his constitutional rights, questioned, and amplified the confession previously given to the detectives in the police car.
A Hwntley hearing was held to determine the voluntariness of defendant’s confessions. The confession obtained from defendant after interrogation at the police station was suppressed because the police were aware that defendant was represented by counsel and questioned him in the absence of his attorney. However, the hearing Judge found that the earlier oral confession made by defendant in the police car was “ a spontaneous reiteration of the facts impelled, probably, by his wanting to unburden his conscience ”, was not induced by any questioning and was volunteered after he had been advised of his constitutional rights.
During the voir dire examination of the jury, defendant was permitted to withdraw his plea of not guilty to a charge of first degree murder and allowed to plead guilty to manslaughter in the first degree. He was sentenced to imprisonment for a term of from 10 to 15 years.
The Appellate Division, First Department, affirmed defendant’s conviction (31 A D 2d 536) upon the ground that his confession was admissible as “ a wholly voluntary statement not the product of questioning ”, citing People v. Torres (21 N Y 2d 49, 54, 55).
Defendant does not dispute the fact that he was legally sane at the time of the crime and at trial. Defendant’s police station confession was suppressed and is not in issue before this court.
• The record amply supports the factual findings of the courts below, that defendant volunteered the confession in the police car without interrogation after having been advised of his constitutional rights by his attorney and the detectives. The record *143 indicates that defendant was rational and coherent at the time he volunteered this confession. (People v. Leonti, 18 N Y 2d 384, cert. den. 389 U. S. 1007; People v. Stephen J. B., 23 N Y 2d 611; People v. Dudley, 24 N Y 2d 410.) Further, defendant had nine convictions at the time of his arrest in the instant case, and it must, therefore, be assumed that he was experienced in the workings of the law at that time.
The only issue before this court, therefore, is whether defendant’s spontaneous oral confession must be suppressed, as a matter of law, solely because defendant was under arrest and represented by counsel at the time he volunteered his confession. Primarily relying upon People v. Vella (21 N Y 2d 249) and People v. Arthur (22 N Y 2d 325), defendant contends that once counsel enters the proceeding “ no statements made by the accused can be used against him, albeit they are voluntary. ’ ’
This court recently had occasion to pass upon the scope of a suspect’s right to counsel in People v. McKie (25 N Y 2d 19). The court stated that the right to counsel “ converge [s] ” with the suspect’s privilege against self incrimination which it is intended to protect during custodial interrogation. We held admissible an incriminatory statement made by McKie to police in the absence of his retained counsel who had previously directed the police not to question McKie because the suspect had not been subjected to “ custodial interrogation ” within the meaning of Miranda v. Arizona (384 U. S. 436). People v. Arthur (supra) and the case law from which Arthur sprang was summarized as follows: "Arthur simply recognized, as did the cases which came before it, that the criminal proceeding commences with formal custody and, if a defendant in fact is represented by counsel, and the police know it, they may not question him in the absence of counsel.” (25 N Y 2d, at p. 26; emphasis supplied.)
It is thus clear that what is prohibited by McKie (supra) is custodial interrogation of a suspect who is represented by counsel in the absence of his attorney if the police know he is so represented. (People v. McKie, supra; People v. Baker, 23 N Y 2d 307.)
The avowed purpose of the Miranda rules is to restrict “ custodial interrogation ” which the Supreme Court found to be inherently coercive. Thus, the Supreme Court explained in the Miranda opinion: “ Confessions remain a proper element in *144 law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.” (384 U. S., at p. 478.) Similarly, this court has held that volunteered statements are not barred by the Fifth Amendment. (People v. Torres, 21 N Y 2d 49, supra; People v. R. N., 23 N Y 2d 963.) Absent interrogation, post-Miranda decisions have consistently held that volunteered or spontaneous statements made by suspects who were plainly in custody and had not been given the Miranda warnings are admissible. (See, generally, People v. Charles, 66 Cal. 2d 330 [Cal. Sup. Ct., 1967]; People v. Kenny, 53 Misc 2d 527; Ballay v. People, 160 Col. 309 [1966]; Pitman v. United States, 380 F. 2d 368, 370 [9th Cir., 1967]; United States v. Cruz, 265 F. Supp. 15, 20 [W. D., Texas, 1967]; Spurlin v. State, 218 So. 2d 876, 878 [Miss., 1969]; Bivens v. State, 242 Ark. 362 [1967]; Hammond v. State, 428 S. W. 2d 639 [Ark., 1968].) Indeed, our research has failed to disclose a single decision of any court holding inadmissible a volunteered confession made in the absence of counsel.
It is clear that defendant was not interrogated within the meaning of Miranda (supra). Defendant spontaneously began to talk about his involvement in the homicide when he entered the police car. The arresting officer interrupted defendant and at once informed defendant that he was under no obligation to make a statement and reminded him that his attorney had advised him of his constitutional rights. However, defendant insisted on talking, and the detective’s request that defendant start from the beginning if he wanted to tell his story does not constitute “ custodial interrogation” within the meaning of Miranda v. Arizona (supra). (People v. Cerrato, 24 N Y 2d 1; People v. R. N., supra; State of New Jersey v. Barnes, 54 N. J. 1; *145 People v. Charles, 66 Cal. 2d, at pp. 342-343, supra [Cal. Sup. Ct., 1967].)
Truly voluntary confessions constitute a highly trustworthy type of evidence. Indeed, as indicated above, the United States Supreme Court has permitted admission of volunteered confessions even though a suspect in custody had not been warned of his constitutional rights. (Miranda v. Arizona, supra.) No court has yet held that a police officer must take affirmative steps, by gag or otherwise, to prevent a talkative person in custody from making an incriminatory statement within his hearing. (Cf. Ballay v. People, supra.) To require a police officer to prevent a prisoner from volunteering a statement, or to prevent the officer from divulging statements spontaneously made to him would stretch the comprehension of the average citizen to the breaking point. Our decisions must appear to be rational, fair as well as practical; if the courts are to retain the respect of the people. The admonition of Justice Caedozo is particularly appropriate under these circumstances — “ [J]ustice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament.” (Snyder v. Massachusetts, 291 U. S. 97, 122.)
Accordingly, the judgment of the Appellate Division should be affirmed.
Judges Soileppi, Bergan and Bkeitel concur with Judge Jasen ; Chief Judge Fuld and Judge Burke dissent and vote to reverse and to suppress the oral confession on the ground that no statement made in the absence of counsel should have been used against defendant, whether spontaneous or not, once he had been arrested and taken into custody and his lawyer had informed the police that he had advised the defendant not to make any statements. (See People v. Vella, 21 N Y 2d 249; People v. Arthur, 22 N Y 2d 325.)
Judgment affirmed.