Wachtler, J.
After pleading guilty the defendant was convicted of possession of a weapon as a felony (Penal Law, former § 265.05) and of resisting arrest. Thereafter, when he appeared for sentencing he sought to withdraw his guilty plea. The application was denied and he was sentenced to an indeterminate prison term of up to seven years on the weapons charge and to an unconditional discharge on the charge of resisting arrest. On this appeal the defendant contends, inter alia, that the trial court was in error in refusing to suppress, after a hearing, the weapon in question and certain incriminating statements made by the defendant out of the presence of his attorney after counsel had been assigned.
At the suppression hearing Officer Krosofsky, the arresting officer, gave the following account of the events leading up to the defendant’s arrest. On July 5, 1972, the defendant, Leon Townes, and his companion, Lionel Warfield, were observed by four plainclothes police officers connected with an anticrime unit. The defendant, and Warfield, were walking around, somewhat aimlessly, in the vicinity of East 80th Street and Third Avenue in Manhattan at approximately 10:30 p.m. For an unstated reason, the four officers, riding in an unmarked vehicle, decided to follow the defendant and his companion and keep them under surveillance. Shortly after first spotting Townes and Warfield, Officer Krosofsky and one other plainclothesman disembarked from the véhicle and began following the defendant and his companion on foot. The officers stayed *99 approximately one-half block behind the two civilians; during this time the two other officers remained in the vehicle and maintained radio contact with the officers on foot. Townes and Warfield continued to walk in various directions and the officers continued to "tail” them, both on foot and in the unmarked car. Eventually the two officers on foot re-entered the unmarked car and continued to follow the defendant and his companion.
Finally, at about 11:30 p.m., after having followed the defendant and his companion for approximately one hour and having observed them doing nothing more than walking about and "[l]ooking at people and stores”, Officer Krosofsky emerged from the unmarked car and approached the two men. The officer testified that he approached them from the front, with his badge in his left hand and his gun drawn, but at his side, and that when he was approximately 15 feet from the men he shouted "Freeze, police.” Thereafter, according to Krosofsky’s testimony at the suppression hearing, the defendant turned his back to the officer, took two steps and then wheeled around and pointed a gun at the officer. Krosofsky testified that he heard a single "click” at which point he fired his own gun three times at the defendant. A second officer then ran over to the defendant and began to grapple with him. Officer Krosofsky joined the fracas and eventually the two officers wrestled the defendant to the ground and seized a .32 caliber revolver from his hand.
The following day the defendant was arraigned in criminal court and counsel was assigned by order of that court on July 10, 1972. On July 14, 1972, an indictment was filed against the defendant charging him with attempted murder, attempted assault in the first degree, two counts of attempted assault in the second degree, possession of a weapon as a felony, and resisting arrest.
After he was indicted, Townes sent a letter to the New York City Civilian Complaint Review Board (hereinafter "Review Board”) in which he claimed that he had been illegally beaten by police officers on the night of the incident leading to his arrest. Townes’ letter was received by the Review Board on July 18, 1972, and a police officer was dispatched to interview the defendant at the Riker’s Island Detention Facility where he was incarcerated.
Patrolman Howard interviewed the defendant, with the defendant’s consent, at Riker’s Island on July 21, 1972. The *100 counsel assigned to the defendant with respect to the charges stemming from the events of July 5 was not present at this interview, nor is there any indication in the record that he had been contacted and informed that the defendant was going to be interviewed concerning this episode or that he had agreed to allow any such questioning in his absence.
Officer Howard testified at the suppression hearing that he went to Riker’s Island dressed in civilian clothes, advised the defendant of his constitutional rights, and then asked Townes to describe in his own words the events which occurred on the evening of July 5. The defendant proceeded to relate an account of the incident in which he described various acts of police misconduct. During the course of this account, however, Townes stated that after the officers had knocked him to the ground and punched and kicked him repeatedly, one of the officers reached into the defendant’s pocket and removed the gun in question. Thus, in essence, defendant incriminated himself by reason of his admission that he had been carrying a gun.
Before trial Townes moved to suppress the weapon as well as the statement made to Officer Howard. After a hearing defendant’s motions to suppress were denied with respect to both the gun and the incriminating statement and thereafter Townes entered his plea of guilty to possession of a weapon as a felony and resisting arrest, in satisfaction of all the counts of the indictment.
With regard to the suppression of the gun, the defendant argues that the encounter between himself and the plainclothes police officers constituted an unconstitutional seizure of his person and that the weapon should therefore be suppressed. While we agree that the police activity amounted to an unconstitutional seizure of Townes’ person, we do not agree that it was error for the trial court to refuse to suppress the gun.
This court has recently set forth the standards to be followed in evaluating the lawfulness of police activity respecting street encounters with civilians (People v De Bour and People v La Pene, 40 NY2d 210; People v Cantor, 36 NY2d 106), noting that "we must consider first whether or not the police action was justified in its inception and secondly whether or not that action was reasonably related in scope to the circumstances which rendered its initiation permissible” (People v De Bour, supra, p 215). Applying this standard to the present case *101 it is clear that the actions of the police officers cannot be sustained.
It cannot be argued, and indeed the prosecutor concedes the point in his brief, that even were we to hold that the police action in stopping the defendant was justified in its inception, doing so with gun drawn and shouting a command to "Freeze” was not reasonably related in scope to the circumstances which rendered the stop permissible, and hence the test laid down in De Bour has not been met. Here we have had a significant interruption with this defendant’s freedom of movement and such a seizure by the police cannot be said to pass constitutional muster without further justification for their action (People v Cantor, supra, p 111; Terry v Ohio, 392 US 1).
Having so held, we turn next to whether the defendant’s gun should be suppressed as the fruit of the unlawful seizure of his person. The defendant argues that the instant case cannot be distinguished from People v Cantor (supra), and that therefore we should reach a similar result; i.e., the suppression of the weapon. We cannot agree.
In Cantor the defendant was in front of his own home when he was surrounded by three men in street clothes approaching him from different directions while a fourth man in a private unmarked vehicle pulled to the curb in a manner so as to prevent any possible movement of defendant’s car. None of the plainclothes police officers had identified themselves as such when Cantor, confronted with this seemingly precarious situation, reached into his pocket and pulled out what appeared to be a pistol. Thereafter one of the officers identified himself and exhibited his badge and Cantor immediately returned the object he was holding to his back pocket and placed his hands above his head as directed. The officers subsequently removed the pistol from Cantor’s pocket and seized it. We held that the pistol should have been suppressed as the fruit of an unconstitutional seizure of the person since it had been "revealed as a direct consequence of the illegal nature of the stop” (People v Cantor, supra, p 114).
The instant case is distinguishable. Under the affirmed findings of fact it cannot be said that the weapon was revealed as a direct result of the unlawful nature of the police conduct. Here the gun was produced after the officers had clearly identified themselves, not before as in Cantor; and here the defendant did not immediately reholster the weapon and comply with the officer’s commands, as occurred in Cantor, *102 but rather Townes disregarded those orders, pulled the weapon, aimed it at the officer and attempted to fire it. Thus, under these circumstances Townes’ act was unjustified and criminal in nature (see Penal Law, § 35.27) and unrelated to the initial albeit unlawful action on the part of the police (see People v Archiopoli, 39 AD2d 748; see, also, People v Munger, 37 AD2d 950, app dsmd 33 NY2d 576).
We find that Townes’ free and independent action in pulling and attempting to fire the gun, taken after and in spite of, or perhaps because of, the plainclothesman’s identification of himself as a police officer, serves to render any "connection between the lawless conduct of the police and the discovery of the challenged evidence * * * 'so attenuated as to dissipate the taint’ ” (Wong Sun v United States, 371 US 471, 487, quoting Nardone v United States, 308 US 338, 341; see Brown v Illinois, 422 US 590, 603-604; People v Martinez, 37 NY2d 662). The motion to suppress the weapon was, therefore, properly denied.
We turn now to the issue regarding the lower court’s refusal to suppress Townes’ statement to Officer Howard, the representative of the Review Board sent to interview the defendant with respect to his allegations of illegal and improper police action. As noted, the interview in question took place at the Riker’s Island Detention Facility, in the absence of Townes’ attorney, after he had been arraigned and indicted and counsel had been assigned. The defendant argues that the interview was prohibited in the absence of his attorney and that his purported waiver of his right to counsel was ineffective since it took place without the presence of his counsel. The People, on the other hand, contend that the defendant’s statement was voluntary and not the product of interrogation in that the defendant had initiated the Review Board’s involvement by writing to them and alleging police misconduct and because the interviewing police officer did nothing to induce the statement; and that the interview was not held in connection with the criminal charges pending against the defendant but rather the statement was made in connection with a completely separate proceeding concerned solely with the allegations of improper conduct by the arresting officers. We agree with the defendant.
It has long been the law in this State that any incriminating statement made in the absence'of counsel by a defendant in response to interrogation relating to the criminal charge *103 under investigation after he has been arraigned or indicted is inadmissible in evidence against the defendant (People v Waterman, 9 NY2d 561, 565; People v Di Biasi, 7 NY2d 544, 550-551). This rule developed from our view that once an individual has been arraigned or indicted, formal criminal proceedings against him have commenced and any interrogation after that point would infringe upon a defendant’s right to counsel and his right to be free from testimonial compulsion (People v Stanley, 15 NY2d 30, 32, citing People v Waterman, supra, pp 564-565). Thus, the only question now before us is whether an interview between the defendant and a police officer representing the Review Board, concerning the events surrounding the defendant’s arrest on the very charge which is the subject of the criminal proceeding then pending against him, should fall within this rule.
The fact that it was the defendant’s letter of complaint which initiated the interview does not render his incriminating statement voluntary. The defendant contacted the Review Board to complain about police action toward him which he felt was unjust and unlawful. While this action indicated the defendant’s willingness to freely discuss the conduct of the police with respect to this incident, we do not believe that it should be construed as an indication that the defendant sought to expose himself to interrogation with respect to factual matters which could be deemed relevant with respect to the existence of the underlying crime with which he was charged. By his initiative the defendant sought to assert a right which he felt had been transgressed, not to open the door to yet another transgression of his rights.
Our view is not altered by the prosecution’s claim that the inculpatory statement was not the product of interrogation or induced by Officer Howard. The prosecution’s reliance on People v Kaye (25 NY2d 139) and People v McKie (25 NY2d 19) is misplaced since both cases are factually distinct from the present case. In Kaye the police officer questioned the defendant for the purpose of obtaining a clarification of the defendant’s version of the story only after the defendant had blurted out a damaging though somewhat ambiguous admission, while in McKie there was no interrogation of the defendant. In the case presently before us, at the suppression hearing Officer Howard himself testified that his intent, expressed to the defendant, in going to Riker’s Island was to interview Townes and that, after informing Townes of his constitutional *104 rights, he asked Townes "to tell me in his own words, the events which occurred on the evening of July 5, 1972 at approximately 10:30 p.m. at 84th Street and Madison Avenue”. It was in responding to this inquiry that Townes made the incriminating statement. We are of the opinion that this single question directly seeking detailed information with respect to the factual details of the very incident which formed the basis of the criminal charges against the defendant was sufficient to constitute an interrogation.
Nor can we accept the prosecution’s argument that even though the damaging admission was made during the course of interrogation, it should not be suppressed since the interview before the Review Board was not in the course of the investigation concerning the particular criminal charges pending against Townes. This is not a case like those in which we have held admissible incriminating statements obtained in the absence of counsel where counsel had entered other criminal proceedings then pending against the defendant where the challenged interrogation involved a totally unrelated proceeding concerning a second and distinct criminal investigation arising out of an entirely discrete set of facts (see People v Taylor, 27 NY2d 327; People v Hetherington, 27 NY2d 242). Here the subject of the interrogation and the subject of the criminal charges are so inextricably interwoven in terms of both their temporal proximity and factual interrelationship as to render unavoidable the conclusion that any interrogation concerning the arrest would almost inevitably involve some potentially incriminating discussion of the facts of the crime itself. To separate the arrest from the crime itself, and more importantly, to ask the defendant to make that distinction, is to seek to draw far too fine a line. Indeed, it is apparent from the fact that at the very outset of the interview Officer Howard advised the defendant of his constitutional rights, that the Review Board itself was well aware of the probability that a discussion of the circumstances underlying the pending indictment would ensue. Under such circumstances we cannot accept the proposition that the interview in question was unrelated to the outstanding criminal charges against this defendant.
We hold that the defendant’s incriminating statement made in the absence of his attorney during the course of an interview before the Review Board was obtained in violation of his constitutionally mandated right to counsel and therefore it *105 should have been suppressed. The Review Board, aware that this defendant had been arraigned, indicted and assigned counsel, was free to interview the defendant and to make use of the product of that interview in connection with its inquiry into the allegations of police misconduct, but the People should have been prohibited from using the inculpatory statement so elicited in the prosecution of the criminal charges against the defendant.
The prosecution nevertheless argues that the defendant’s conviction upon his guilty plea should be allowed to stand. We would but note that the incriminating statement was a "likely factor which might have induced the plea and might have affected substantially a verdict upon a trial” (People v Ramos, 40 NY2d 610, 619).
Accordingly, the order of the Appellate Division should be reversed, the plea vacated, the defendant’s statement suppressed, and the case restored to its prepleading status.