■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v RANDOLPH PETER TOMPKINS, Respondent.—Appeal by the People from an order of the County Court, Orange County, dated July 19, 1976, which, after a hearing, granted defendant's motion to suppress certain statements made by him. Order reversed, on the law, motion denied, and case remanded to the County Court for further proceedings not inconsistent herewith. On December 19, 1974, at approximately noontime, defendant, in the company of his attorney, his mother and one George Gross, surrendered himself to the State Police in Poughkeepsie for booking on charges relating to a series of burglaries in the Millbrook section of Dutchess County on December 13, 1974. Defendant's attorney advised the police at that time that he did not want his client questioned. The attorney did not limit his representation to any particular charges and desired an expeditious arraignment. Thereafter, over objection from the attorney, defendant and Gross were placed in a

lineup which, apparently unbeknownst to the attorney, pertained to a robbery committed at a restaurant in Newburgh in Orange County on November 5, 1974. The lineup was completed at 3:30 P.M., approximately two hours after the attorney had left police headquarters and returned to his office. Defendant was thereafter arraigned on the burglary charges and .released. On December 23, 1974, while on bail on the burglary charges, defendant was arrested by the State Police in Fishkill, Dutchess County, for an alleged robbery committed at a Seven-Eleven store in Fishkill. Defendant's arrest on this charge was made on the basis of a written statement obtained from Gross. Defendant was advised of his rights, shown a copy of Gross' statement and allowed to make a phone call to his mother. About 5 to 10 minutes later defendant received a call from his attorney, who advised him not to answer any questions. Defendant notified the police of his attorney's call and his advice, but stated that he wanted to talk to them anyway. Defendant was then questioned and, during the course thereof, implicated himself in the commission of the robbery in Newburgh, the subject of the instant indictment. Defendant's answers to this questioning were reduced to writing. The written confession states, in pertinent part: "I have been told by * * * the New York State Police, that I do not have to say anything and that anything that I say can and will be used against me in a Court of Law. I have also been told that I have the right to talk to a lawyer and have him present while I am being questioned * * * that if I can not afford to hire a lawyer, a lawyer would be appointed to represent me before any questioning * * * that I can exercise these rights at any time and not answer any questions or make any statements. Q. Do you understand each of the rights that I have explained to you? A. Yes Q. Is it true that you have had the opportunity to talk with your mother previous to saying anything to me? A. Yes Q. Is it also true that you had an opportunity to talk to your attorney on the telephone? A. Yes, that is true. Q. Do you still wish to talk with us? A. Yes. Q. Having these rights in mind do you wish to talk to us now? A. Yes." On December 26, 1974 defendant was taken to State Police Headquarters,. where he was arrested and booked for the robbery in Orange County. He was again advised of his rights and made further admissions concerning his participation in the Orange County robbery. The trial court held that the statements elicited by the police from defendant on December 23 and December 26, 1974, insofar as they pertained to the robbery in Orange County (the subject of the instant indictment), were obtained in violation of defendant's right to counsel, and that his purported waiver of his right to counsel was ineffectual in the absence of his lawyer. In so holding, the County Court ruled that any purported waiver of the right to counsel had to be measured against the rule stated in *People v Arthur* (22 NY2d 325) and reaffirmed in *People v Hobson* (39 NY2d 479, 481), i.e.: "Once a lawyer has entered a criminal proceeding representing a defendant in connection with criminal proceeding representing a defendant in connection with criminal charges under investigation, the defendant in custody may not waive his right to counsel in the absence of the lawyer". We do not quarrel with, and indeed we recognize, the rule enunciated in *Arthur* and *Hobson*. Rather, it is our position that, under the facts of this case, defendant's waiver of his right to counsel was a valid and effective one. In this regard it should be noted that the Court of Appeals stated in *Hobson* (p 481): "Any statements elicited by an agent of the State, however subtly, after a purported 'waiver' obtained without the presence or assistance of counsel, are inadmissible." In the case at bar, defendant was arrested on the basis of a written statement of an accomplice. He then had the benefit of

"assistance" of his attorney through a telephone call from the latter. After conferring with his attorney on the telephone, he chose to waive his right to counsel and decided to confess to the police. Under these facts, it cannot be seriously argued that defendant did not have the benefit of counsel before waiving his right to same. The constitutional principle enunciated in *Arthur* and *Hobson* was clearly meant to prevent the unwary suspect from overbearing intimidation by the police, by insuring that the former's counsel would be available before any questioning could commence. The defendant was well aware of police procedures and practices. He was allowed to speak to his attorney over the telephone and, faced with incriminating evidence against him, freely chose to disregard his attorney's advice and to confess to the police. Under these circumstances, defendant's waiver of his right to counsel was valid, and the motion to suppress should have been denied. Gulotta, P. J., Latham and Suozzi, JJ., concur; Margett, J., dissents and votes to affirm the order, with the following memorandum, in which Mollen, J., concurs: I would affirm the suppression of defendant's confession by the County Court. The relevant testimony at the *Huntley* hearing was as follows: Rudolph P. Russo, an attorney, testified that he was retained to represent the defendant on December 18, 1974. The next day, December 19, Russo called the State Police and told them that defendant "understood they were looking for him". He told the police that defendant was in his office and offered to surrender defendant at the Troopers' Barracks in Millbrook. The police agreed to these arrangements and Russo arrived at the barracks just before noon on December 19. In addition to his client, Russo was accompanied by defendant's mother and by a codefendant, George Gross, who was also wanted by the police. Russo did not, however, represent Gross. According to Russo, he spoke with an investigator named Fairchild, who told him the police were going to take defendant into "the back room" for booking. Russo told Fairchild he wanted to be present, but that was not permitted. Russo then advised the investigator that he did not want any questions asked of his client. Fairchild assented. Russo inquired about three times during the course of the next hour or so, whether the booking had been completed. Each time the trooper at the desk told Russo that he would "look into it." Finally, at about 1:10 P.M., Investigator Fairchild approached Russo and told him that the defendant and Gross were going to be placed in a lineup. Russo testified that he was not told the purpose of the lineup. He stated that he requested to be present at the lineup, but that his request was denied. Russo then informed defendant's mother of the situation and departed. Russo "vaguely" recalled speaking to the defendant over the telephone a few days thereafter. His recollection was that he told defendant to be cooperative "but under no circumstances to answer any questions". On cross-examination Russo stated that he was paid a retainer by defendant's mother on December 19. It was Russo's recollection that he "may have" asked Investigator Fairchild on the 19th whether the lineup "had something to do with a robbery * * * I may have asked him that and he may have told me yes it did." He admitted that he couldn't specifically remember requesting to be present at the lineup. Investigator Roger Fairchild testified that defendant and Gross were booked on December 19, 1974 in connection with a series of burglaries which had been committed on December 13, 1974 in the Village of Millbrook. Booking took about an hour; shortly thereafter Fairchild received a message that Russo, who was in the waiting room, wanted to speak to him, Fairchild went to the waiting room where he was asked by Russo if there was any delay. Fairchild said he replied that there would be some delay; that the defendants were

going to appear in a lineup. Russo then departed. According to Fairchild the lineup was held in connection with the robbery committed at a Carroll's restaurant in New Windsor or Newburgh on November 5, 1974. The defendant and Gross were suspects in this robbery on the basis of information which had been supplied by a third party participant. Subsequent to the lineup, at approximately 5:00 P.M. that day, defendant was taken before the Town Justice in the Village of Millbrook, arraigned on the burglary charges, and released on bail. No charges were lodged at that time in connection with the alleged robbery at the Carroll's restaurant. Investigator John Heffron, of the Fishkill Station of the State Police, testified that he arrested defendant at 11:15 A.M. on December 23, 1974. The arrest was in connection with a robbery committed at a Seven-Eleven store in Fishkill which had occurred on December 10, 1974. Defendant was taken to the Fishkill Station and placed in the senior investigating office, "which is a smaller office off the main office." Defendant was given his *Miranda* warnings. Defendant asked why he was there and was told that an accomplice, codefendant Gross, had given a statement implicating him. Defendant wanted to see the statement and it was shown to him. According to Heffron, "evidently [the statement] made him a little mad, he cussed the other guy and he made the comment * * * if people want to talk, I'll do some talking." Defendant then requested, and was given, permission to call his mother. A few minutes later defendant received a telephone call. Investigator Heffron assumed the call was from defendant's attorney because when defendant hung up he told Heffron that he had just talked to his attorney, that his attorney had told him not to talk to the police, but that he was going to talk to the police anyway. Defendant thereupon confessed to both the robbery committed at the Seven-Eleven store, for which he had been arrested, and the November 5, 1974, Carroll's robbery in Newburgh (in connection with which he had been placed in a lineup on December 19, 1974). On cross-examination Investigator Heffron stated that he was unaware, on the date of defendant's arrest, of any burglary investigation involving the defendant; nor was he aware, when he arrested defendant, of a robbery investigation in connection with anything other than the robbery committed at the Seven-Eleven store. He did advise defendant, when defendant was picked up, that he was under arrest. After reading defendant his "rights", Heffron and defendant "got in a conversation about him getting flipped by an accomplice". Heffron didn't remember whether defendant told his mother to call his lawyer—"He may have". Five to 10 minutes after defendant finished speaking to his mother, he received a telephone call, apparently from his attorney. Based upon the foregoing testimony, and to a large extent upon *People v Hobson* (39 NY2d 479), the County Court ordered suppression of defendant's confession with respect to the robbery committed at Carroll's restaurant (only the Carroll's indictment was before the court). I concur with that determination. The rule set forth in *People v Hobson (supra)* is clear and it is unequivocal. "Once a lawyer has entered a criminal proceeding representing a defendant in connection with criminal charges under investigation, the defendant in custody may not waive his right to counsel in the *absence* of the lawyer" *(People v Hobson, supra,* p 481; emphasis supplied). There are three exceptions to this rule. First, "the fact that a defendant is represented by counsel in a proceeding unrelated to the charges under investigation is not sufficient to invoke the rule". Second, "The rule applies only to a defendant who is in custody; it does not apply to noncustodial interrogation". Third, the rule "does not render inadmissible a defendant's *spontaneously volunteered* statement" *(People v Hobson, supra,* p 483; emphasis supplied). None of

these exceptions apply in the case at bar. The County Court found that the defendant was represented by Mr. Russo in connection with the Carroll's robbery as early as December 19. The court noted that the People so concede, and on this appeal the People do not challenge that finding. Nor can there be any doubt that defendant was in custody at the time he "waived" his right to counsel. The only real issue is whether defendant's confession was "spontaneously volunteered". In setting forth this exception to the general rule, the Court of Appeals, in *Hobson,* cited *People v Kaye* (25 NY2d 139, 144) and indicated that *People v Robles* (27 NY2d 155, 159, cert den 401 US 945) should be compared. In *Kaye,* the defendant had been surrendered to the police by his father and by his attorney in connection with a homicide. After informing defendant that he was being arrested for the homicide, the detectives placed him in their car to drive to the police station. "Almost immediately after entering the car and without being asked a single question, defendant blurted out, 'It's all a mistake, but I know he forgave me. He's in heaven now. It didn't have to happen. I'm sorry I ever met him in the village.' The defendant repeated this statement several times and then began to discuss meeting the deceased" *(People v Kaye, supra,* p 141). Despite being reminded, at that point, that he didn't have to make any statements, the defendant persisted by saying, "I have nothing to hide. It was all a mistake. I know I'm forgiven. I want to tell my side of the story, and I want to leave it up to the courts and doctors to decide" *(supra,* p 141). Defendant then went on to relate how he had choked and beaten the deceased 13-year-old boy to death. Defendant was convicted of manslaughter in the first degree, and the Appellate Division, First Department, affirmed the conviction (31 AD2d 536) upon the ground that his confession was admissible as "a wholly voluntary statement *not the product of questioning"* (emphasis supplied). The Court of Appeals, in affirming, also laid stress on the fact that the confession was volunteered *before any interrogation* had *taken place.* "Absent interrogation, post-*Miranda* decisions have consistently held that volunteered or spontaneous statements made by suspects who were plainly in custody and had not been given the *Miranda* warnings are admissible" *(People v Kaye,* 25 NY2d 139, 144, *supra).* It seems obvious from *Kaye* that a statement cannot truly be "spontaneously volunteered" where it is the product of "interrogation"; this is particularly so where it is the result of "custodial interrogation". *People v Robles* (27 NY2d 155, *supra),* the case cited for comparison purposes in *Hobson,* presents a factual counterpoint to the *Hobson* rule, yet fleshes out the principles of law with regard to whether a confession is genuinely spontaneous and voluntary. On its facts, *Robles* constituted a departure from a line of cases highlighted by *People v Arthur* (22 NY2d 325) and reaffirmed by *Hobson* (see *People v Hobson, supra,* pp 485–486). Robles was placed in a detention pen upon his arrival at the police station. He was not questioned and, when his attorney appeared, he was left alone with the attorney in a clerical office for about 20 minutes. At the end of this 20-minute period, defendant's attorney came to the door of the office and asked the detective stationed there to "watch" the defendant. The detective entered the room and sat down on a desk facing the defendant. A second detective entered and gave the defendant a sandwich and coffee. The defendant spit his first bite of the sandwich into a wastebasket. The first detective, who had known the defendant prior to this occasion, after an inquiry regarding the refusal to eat, said: "Rick, did you ever think it would wind up like this?" The defendant replied, in the words of the detective, that "he thought it would, from what he read in the newspapers, that he

thought someday he would be arrested for killing those two girls." The detective commented that defendant had made a mess of his life and concluded by asking: "Just what really happened?" The defendant then said, "I don't know * * * I went to pull a lousy burglary and I wound up killing two girls." Defendant's resulting conviction of murder was affirmed by the Court of Appeals. The *Arthur* rule, that once an attorney appears there can be no effective waiver unless made " 'in the presence of the attorney' ", was dismissed as a mere "theoretical statement" of the rule and a "dogmatic claim." That position has, of course, been abandoned by *Hobson's* reaffirmation of the *Arthur* rule. It is doubtful that *Robles* would today be decided as it was. Yet the Court of Appeals did go on, in *Robles,* to discuss the legal principles to be applied in determining whether a confession is spontaneous and voluntary. Citing *People v Rodney P.* (21 NY2d 1), the court noted that an admission is inadmissible only " 'when the questioning takes place under circumstances which are likely to affect substantially the individual's "will to resist and compel him to speak when he would not otherwise do so freely." ' " Applying that standard to the facts of *Robles,* the court concluded that the defendant's "outburst * * * was not the simple negative response which was all [that was] called for, but an impetuous unbosoming of his implication in the crime" *(People v Robles,* 27 NY2d 155, 158, 159, *supra). It* was not, said the court, the result of "inquisitorial" process. In the case at bar, defendant's admission of guilt came only after he had been placed in the "Senior Investigating Office" ("a smaller office off the main office"),* only after he had engaged "in a conversation about him getting flipped by an accomplice", and only after he had then been shown a statement by an accomplice implicating him in a robbery. Surely the circumstances were calculated and likely to affect substantially his " 'will to resist and compel him to speak when he would not otherwise do so freely' " *(People v Robles, supra,* p 159; *People v Rodney P. (supra);* see *People v Cerrato,* 24 NY2d 1). The tactics employed in obtaining defendant's confession were not even very subtle, yet *Hobson* holds that "Any statements elicited by an agent of the State, however subtly, after a purported 'waiver' obtained without the presence or assistance of counsel, are inadmissible" *(People v Hobson, supra,* p 481). Nor is defendant's confession rendered "spontaneously voluntary" by virtue of the fact that he was read his *Miranda* warnings. "Notwithstanding that warnings alone might suffice to protect the privilege against self incrimination, the presence of counsel is a more effective safeguard against an involuntary waiver of counsel than a mere written or oral warning in the absence of counsel [citations omitted]. The rule that once a lawyer has entered the proceedings in connection with the charges under investigation, a person in custody may validly waive the assistance of counsel *only in the presence of a lawyer* breathes life into the requirement that a waiver of a constitutional right must be competent, intelligent and voluntary" *(People v Hobson, supra,* p 484; emphasis supplied). Once the police realized that defendant was represented by an attorney, all communication with reference to the charges under investigation should have ceased. The mere fact that defendant had just spoken to his lawyer over the telephone was, in my view, insufficient to negate the strong presumption against the People with respect to the voluntariness of defendant's waiver (cf. *Brewer v Williams,* — US ——). Defendant's telephone conversation obviously took place in the midst of a prosecutorial atmosphere (cf. *People v Ramos,* 40 NY2d 610, 618).

---

* Cf. *Miranda v Arizona* (384 US 436, 449–457), where the recognized police technique of isolating a suspect in closed, unfamiliar police surroundings is discussed.

Defendant may very well have felt intimidated from discussing the evidence he had been confronted with; evidence which did not even pertain to the Carroll's robbery. The actual physical presence of his attorney would have insured a full realization of the legal consequences of any statements he might choose to make and only in that case might such statements be considered truly voluntary. Were we dealing with a civil case, no matter how trivial, it would be unthinkable for the lawyer for one party to speak to the other party in the absence of the latter's attorney. Certainly, no less is to be expected or demanded when defendants in criminal cases are involved (People v Robles, supra, dissenting opn of FULD, Ch. J.; cf. United States v Thomas, 474 F2d 110, 112).