THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PETER FERDICO, Appellant.—Judgment, Supreme Court, Bronx County, dated November 28, 1973, convicting defendant on his plea of guilty of two counts each of robbery in the first degree, and related crimes, and sentencing him to an indeterminate term of imprisonment of 6⅔ to 20 years, is reversed, on the law, the plea of guilty is vacated and the plea of not guilty reinstated, the defendant's statements to Detective Muller (but not the pretrial or in-court identifications) are suppressed, and the case is remanded to the Supreme Court, Bronx County, for further proceedings. Defendant, indicted for crimes including two armed robberies, pleaded guilty to those robberies, the plea of guilty to cover also three other robberies and a burglary for which the defendant had then been indicted, and two robberies not yet the subject of indictments. Before his plea of guilty, however, defendant had moved to suppress certain incriminating statements alleged to have been made by him to Detective Muller of the New York City Police Department and identifications of him as the perpetrator of the crimes. After a hearing, the court denied the suppression application. In our view, the court was correct in denying suppression as to the identification testimony but it was in error in denying suppression of the statements in the light of the rule enunciated (two and one-half years after the hearing) by the Court of Appeals in *People v Hobson* (39 NY2d 479). Defendant was arrested on July

19, 1973 in the presence of his attorney. The arresting officer, Detective Muller, read the *Miranda* warnings to defendant. Defendant's attorney informed Detective Muller that defendant would not speak to an Assistant District Attorney but defendant stated that he wanted to do so; the attorney stated that he should not do so. Later in the precinct house, defendant was again informed by his attorney that he should not speak to an Assistant District Attorney. Shortly thereafter, the attorney left the precinct house for some hours. Detective Muller testified that during the attorney's absence, while the police officer was taking the defendant's pedigree and was processing the arrest, the defendant initiated a conversation with Detective Muller relating to the crimes charged; that Detective Muller interrupted defendant and explained that he need not say anything in his lawyer's absence and pointed out that his lawyer was not there and that his lawyer would be back; but defendant said that he would tell what happened and he did. Detective Muller thereupon again repeated the *Miranda* warnings to defendant and defendant then related the details of the two robberies. Defendant, on the other hand, testified that the police kept badgering him to talk during his attorney's absence, but that he in fact followed his attorney's advice and made no statements. *People v Hobson (supra,* p 481), laid down this rule: "Once a lawyer has entered a criminal proceeding representing a defendant in connection with criminal charges under investigation, the defendant in custody may not waive his right to counsel in the absence of the lawyer *(People v Arthur,* 22 NY2d 325, 329). Any statements elicited by an agent of the State, however subtly, after a purported 'waiver' obtained without the presence or assistance of counsel, are inadmissible." In the *Hobson* case, the Court of Appeals stated (p 483), however that: "the rule of the *Arthur* case *(supra)* does not render inadmissible a defendant's spontaneously volunteered statement *(People v Kaye,* 25 NY2d 139, 144)." The statements here involved did not have the spontaneous emotional character of those involved in *People v Kaye* (25 NY2d 139) to which the court referred in the *Hobson* case. However, in the *Kaye* case, the Court of Appeals indicated that statements by a defendant that were not the product of interrogation were admissible (p 144). It is arguable that in the present case the defendant's statements were not the result of questioning and interrogation. Certainly that was the tenor of the police officer's testimony. On the other hand, the police officer did at one point say that "I asked him where they went after the stickup, and they went to a house on Pilgrim Avenue, where they hid the guns and split the loot." At one point in cross-examining the defendant, the District Attorney asked these questions and received these answers: "Q. Mr. Ferdico, did you tell Detective Muller that all the answers to all his questions would be found in that private home on Saxton Place? A. What questions? Q. Whatever questions he was asking you? A. No." Thus, it would appear perhaps that there was more questioning by the police officer in this case than in *People v Kaye (supra,* p 144). We think that the defendant's statement was not rendered admissible by *People v Kaye.* We note also that there is a certain verbal inconsistency in the defendant's contention that he made no statements to the police and that his statements were the result of improper questioning by the police. However, in view of the breadth of the rule as enunciated in *People v Hobson,* we think that defendant's statements to the police must be suppressed. Identification testimony, on the other hand, was properly not suppressed. Of course in making his plea of guilty, defendant was aware not only that the police contended that he made incriminating statements, which he denied, but that he had been clearly identified by the victims, in at

least two robberies, and that he faced prosecution on six other felonies. It may thus well be that even if the trial court had suppressed the statements, the defendant would still have entered his plea of guilty. But on this point, the applicable rule is laid down by the Court of Appeals in *People v Ramos* (40 NY2d 610, 618): "Although there may be cases in which the error of admitting excludable evidence may not require reversal, it cannot be gainsaid that a confession is a most serious matter in the trial of a criminal case. It is enough in this case to note that the confession was a likely factor which might have induced the plea and might have affected substantially a verdict upon a trial." The evidence against the defendant in *People v Ramos* appears to have been of comparable strength to that in the case before us; yet the Court of Appeals vacated the plea of guilty there. We must therefore reverse the conviction. The case is extreme. Defendant was unequivocally identified as the perpetrator of several of the robberies; by his own confession in open court in connection with the plea he was plainly guilty of numerous armed robberies (he said that in each case he held the gun to the victim). The crimes and the plea took place in 1973. In the intervening period there have been significant developments in the law including the decisions of the Court of Appeals in the *Hobson* and *Ramos* cases; and pursuant to those decisions we are constrained over four years later to reverse the conviction and vacate the plea. The other errors claimed by the defendant, other than the denial of the motion to suppress his statements, would not in our judgment call for reversal. Concur—Murphy, P. J., Lupiano and Silverman, JJ.; Kupferman, J., dissents in part in the following memorandum: I dissent in part on the well-informed opinion of this court and would affirm.