THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SAMUEL BLASINGAME, Appellant.

Second Department, December 29, 1978

## APPEARANCES OF COUNSEL

*Candee & Hilpert (Richard S. Candee* of counsel), for appellant.

*Carl A. Vergari, District Attorney (Carl J. Rubino, Jr.,* and *Cheryl K. Kosan* of counsel), for respondent.

## OPINION OF THE COURT

TITONE, J.

The question presented on appeal is whether the right to counsel after arraignment may be waived by a defendant in police custody where, although no counsel was either retained or assigned at arraignment, a statement was made in open

court by defendant's father that counsel was to be retained imminently. Contrary to the position taken by the trial court, I do not believe defendant made an intelligent and knowing waiver. Therefore, defendant's motion to suppress his postarraignment inculpatory statement to the police should have been granted.

On December 14, 1976, at about 9:15 P.M., defendant Samuel Blasingame, then 17 years of age, and two other youths, were arrested by Patrolman Donald Sellick of the Peekskill Police Department and brought to police headquarters for questioning about "something that had happened", namely, a robbery that had taken place earlier that day at a florist shop.

Although Sellick denied questioning defendant about the alleged incident, defendant testified and the trial court made a finding of fact, that upon arriving at headquarters, Sellick first asked defendant what had happened and then advised him of his *Miranda* rights. Other than indicating that he understood, defendant remained silent. Approximately two hours later defendant was again interviewed, this time by Deputy Police Commissioner Kirkland. Defendant was advised that he was under arrest for armed robbery and was read his *Miranda* rights a second time. Once again he indicated an understanding of his rights and remained silent.

Testimony was also adduced at the *Huntley* hearing that defendant's father, Charles Blasingame, and later both of defendant's parents, attempted to see him at headquarters. Although initially they were refused access to defendant, the parents were permitted to speak to him after he was processed some three hours after he was taken into custody. While waiting to see his son, Charles Blasingame engaged in a general conversation with Police Lieutenant Nelson. The trial court held that the conversation did not pertain to defendant's case. The men had known each other for a long time.

After seeing his parents, defendant slept for five and one-half to six hours. When he awoke on the next morning (Dec. 15) he was fed and given coffee. Later that morning, at approximately 10:00 A.M., defendant was arraigned at the Peekskill City Court. During the arraignment the Judge presiding asked defendant's father if he wanted time to obtain a lawyer. The elder Blasingame answered in the affirmative.

Defendant's father also testified that after the arraignment he went outside the courtroom and saw Richard Candee, an attorney who was representing his son on another matter. The

father told Candee that before he did anything about obtaining an attorney for his son, he had to contact his wife. When contact was made, presumably by telephone, his wife, in response to his remark that a lawyer had to be obtained said, "Yes, get Mr. Candee". At this point, according to the elder Blasingame, he turned around and said to Candee, "Yes, I want you to represent us". Candee stipulated for the record that he did not recall the exact time he was retained and did not, prior to 10:30 A.M. on the date of arraignment, inform the Peekskill Police Department that he represented the defendant.

Shortly after arraignment, at about 10:30 A.M., defendant was brought to Lieutenant Nelson's office. After being given his rights, defendant confessed to the crimes with which he was charged and attempted to exculpate his two friends. There is a conflict in the testimony as to why defendant was taken to Nelson's office. Nelson, Officer Sellick and Police Sergeant Tumolo all testified that defendant's father told Sellick that his son wished to speak to either Nelson or Sellick. However, the father denied ever telling any member of the Peekskill Police Department that his son wished to have a conversation with either police officer.

Although the trial court "accept[ed] as a fact" that defendant's father had requested counsel for his son upon arraignment, it nevertheless held that defendant made a clear, explicit and intelligent waiver of his right to counsel and that, at the time defendant made his statement to Lieutenant Nelson, *he was not as yet represented by counsel.* I disagree.

▪▪ Contrary to the narrow view expressed by the trial court, the law seems settled that once an accused expresses a desire to obtain an attorney, the police are prohibited from any further interrogation until he has been given that opportunity *(Miranda v Arizona,* 384 US 436, 474; *People v Jackson,* 41 NY2d 146). If an individual states that he wants an attorney, interrogation must cease until one is present *(Miranda v Arizona, supra,* p 474). The *mere requesting* of counsel, or the evincing of an intent to retain counsel, by a defendant is sufficient to render defective any further questioning by police as to the crime with which the defendant is charged. The constitutional and statutory right of a defendant to assistance of counsel at every stage of a criminal case is not limited, *inter alia,* to the situation where a defendant *already* has an attorney *(People v Waterman,* 9 NY2d 561, 565). It also

includes a reasonable time to obtain counsel *(People v Waterman, supra,* p 565; *People v Koch,* 299 NY 378, 381; *People v McLaughlin,* 291 NY 480).

Under the circumstances herein, attention should be given to CPL 180.10 (subd 3, par [a]) which provides:

"Proceedings upon felony complaint; arraignment; defendant's rights, court's instructions and bail matters * * *

"3. The defendant has a right to the aid of counsel at the arraignment and at every subsequent stage of the action, and, if he appears upon such arraignment without counsel, has the following rights:

"(a) *To an adjournment for the purpose of obtaining counsel"* (emphasis supplied).

■ ■ In this case it is evident that at the time of arraignment defendant, through his father sought either to retain counsel or have one assigned. Thus, the People were charged with notice of his intentions in that regard, even though Lieutenant Nelson, an agent of the People, may not have been aware of such fact at the time he obtained defendant's confession (see *People v Ramos,* 40 NY2d 610). Arraignment constitutes commencement of a criminal proceeding and therefore police are then not at liberty to elicit statements from a defendant before he has had an opportunity to obtain legal counsel *(People v Buxton,* 44 NY2d 33; *People v Meyer,* 11 NY2d 162; *People v Dunbar,* 62 AD2d 1132). In my opinion if the authorities are either in doubt, or unaware as to whether an attorney has been retained once a criminal action has been commenced, the burden should devolve upon them to insure that the defendant's right to be represented by counsel is protected. In the instant case, assuming that Nelson knew that defendant was not represented at the arraignment, it was nevertheless his duty to ascertain whether defendant intended either to obtain counsel, or have one assigned (see *People v Ramos, supra,* pp 617-618).

Moreover, the criteria for "a clear, explicit and intelligent waiver" manifestly did not exist in this case. This seems obvious from the following facts: (1) almost from the outset of the case, Lieutenant Nelson had a personal rapport with defendant and his father stemming from the fact that Nelson's son and defendant had played football together; (2) at the time of his arrest defendant was only 17 years old; (3) defendant had already been in custody for more than 13 hours when, ostensibly at his request, he was brought to Nelson's

office for further questioning; (4) Nelson was aware that both defendant and his father trusted him and felt he would act in the youth's best interest; (5) despite the fact that defendant, at his arraignment, indicated through his father that he wanted assistance of counsel, Nelson, approximately one-half hour thereafter, at the instance of Sellick, had defendant brought to his office and elicited a confession from him; and (6) had it not been for the fact that both defendant and his father trusted Nelson and believed he would act in the defendant's best interest, it is extremely doubtful that defendant would have inculpated himself.

■ ■ From the foregoing, I conclude that the 17-year-old defendant, in custody at all times, was never afforded the opportunity to confer with counsel and that his waiver of counsel, though perhaps voluntary in a narrow sense, was not made knowingly and intelligently. Nelson, as a police officer sworn to do his duty, could not at the same time be a father confessor to the defendant and should not, under such circumstances, have allowed himself to be considered as such by defendant and his parents. It is not permissible for the police to use a confession, even if it is voluntarily obtained from a 17-year-old defendant, when, in the course of obtaining the confession, they prevented his receiving the assistance of counsel by means of deception and trickery *(People v Townsend,* 33 NY2d 37). The purported voluntary, unsolicited statement made by the accused to the police officer after arraignment following his arrest, is inadmissible (cf. *People v Meyer,* 11 NY2d 162, *supra).*

Questioning a defendant while the obtaining or assignment of counsel is in progress effectively negates the providing of legal assistance to him. He may not voluntarily waive his right to counsel after arraignment unless counsel is present (cf. *People v Vella,* 21 NY2d 249; *People v Dugan,* 53 AD2d 507).

Accordingly, the judgment should be reversed, defendant's motion to suppress his postarraignment statement or confession granted and a new trial ordered.

O'CONNOR, J. (dissenting). I would have no difficulty at all with the position taken by the majority if the issue they apparently wish to resolve were presented by the facts of the case. I am in full agreement with the position that a defendant may not be questioned after arraignment in the absence of counsel and that he may not waive the right to counsel in

the absence of counsel (see, e.g., *People v Torres,* 63 AD2d 1033). It is both reasonable and proper to extend this rule to a situation where a defendant is in the process of obtaining counsel after arraignment. These principles, aimed at preventing the police from overreaching or taking unfair advantage of a defendant, have nothing to do with the case at bar. Therefore, I must dissent.

Crucial to a determination of this appeal are the circumstances surrounding the incriminating statements made by defendant. Patrolman Sellick testified that on the morning of December 15, 1976, after defendant had returned from the arraignment and spoken with his father (whom he had also conferred with the previous night and who actively sought counsel for his son after the arraignment) defendant's father informed him that his son wished to speak to Sellick or Lieutenant Nelson. It is worthy of note that defendant knew Nelson for more than 10 years and that at the *Huntley* hearing he testified that he thought Nelson was both fair and trustworthy. Sellick went to see defendant, who informed him he wished to speak to Nelson. Lieutenant Nelson also testified that it was defendant who sought to speak with him. Both defendant and his father testified that they had in no way indicated that defendant desired to speak with Nelson. Thus, a clear question of fact was presented, and was resolved by the court as follows: "In the present case, the Court would find that the defendant did *voluntarily* offer to speak to Lt. Nelson whom he had known and trusted for some time previously, on the morning of December 15, 1976, despite defendant's contention that he had not made such an offer, largely because defendant's testimony coincides with that of Lt. Nelson in one vital respect; that he, the defendant, admittedly wanting to get his friends Berry and Hammonds released, told Lt. Nelson that they had not been involved in the alleged crime" (emphasis added). Sergeant Tumolo, who was present in Nelson's office, testified that defendant had been "emphatic" about the fact that his two friends were not involved in the crime. It is little wonder that the question of credibility squarely presented was resolved in favor of the police rather than in favor of a father clearly upset about his son's arrest and defendant, a young man who at the time of his arrest had already amassed five arrests and four convictions. While on the subject of credibility it is also noted that at the *Huntley* hearing defendant had a most difficult time explaining how he knew

his friends were not participants in the robbery if he was not at the scene of the crime.

In *People v Yukl* (25 NY2d 585, 588), the Court of Appeals noted that "great deference must be allowed the trier of fact." As stated in *People v Leonti* (18 NY2d 384, 390), "where there are conflicting inferences to be drawn from the proof, the choice of inferences is for the trier of the facts." It is within this context that I find particularly troubling the finding of the majority, without basis either in reason or in the record, that defendant was brought to Nelson's office on Nelson's initiative and that the confession was elicited and not volunteered. In this case we have a defendant who, having four convictions, was aware of what was transpiring. At the time the incriminating statements were made defendant was well fed, well rested, and had just conferred for the second time with his father, who was in the process of retaining an attorney for him. I am unable to fathom how the majority concludes that it could not be inferred by the trier of the facts that defendant, highly motivated as he was to clear his friends and believing that Lieutenant Nelson was both fair and trustworthy, voluntarily made a statement incriminating himself and disassociating his friends from any involvement in the crimes.

Once the finding of the trier of the facts is properly accepted, this case becomes a simple one to resolve. As stated by the Court of Appeals in *People v Buxton* (44 NY2d 33, 37): "Once an attorney has been requested, interrogation must cease, but this rule does not render inadmissible all statements made after a request for counsel. The defendant may make a spontaneous admission or simply change his mind and voluntarily make a statement * * * The *Miranda* decision was designed to prevent further interrogation, and thus a statement is admissible if volunteered—even if an attorney is on the way". Defendant here was found to have spontaneously volunteered a statement to a man he trusted in order to have his friends released. As such, it was fully admissible (see *People v Kaye*, 25 NY2d 139). The question asked by Nelson as to what defendant wanted to talk to him about does not create an elicited confession because it was defendant who sought the audience with Nelson. The only troublesome point is that after defendant confessed, Nelson asked him who had carried the gun during the robbery. This, however, is not a question that elicited the confession which preceded it, and it

was not improper to ask defendant to expound upon his narrative (see *People v Kaye, supra,* p 144). Nelson gave defendant *Miranda* warnings prior to his statement, but the warnings were superfluous and, in fact, indicated how cautious Nelson was and the degree to which he was protective of defendant's rights.

*People v Meyer* (11 NY2d 162) is not to the contrary. Although the Court of Appeals in *Meyer* used some language indicating that it was limiting the use of spontaneously volunteered statements, *Meyer* was a case involving police interrogation. The ambiguous language in *Meyer* is certainly clarified by the statement of the court in *People v Kaye (supra,* p 144): "Indeed, our research has failed to disclose a single decision of any court holding inadmissible a volunteered confession made in the absence of counsel."

Although not relevant to an appeal involving a spontaneously volunteered confession rather than a waiver of counsel prior to interrogation, I would like to take issue with several points raised by the majority on the subject of waiver. The majority states that it was wrong for Lieutenant Nelson to take defendant's confession because he filled the conflicting roles of a "father confessor" and a police officer. Without reaching the profound question of whether these roles were indeed conflicting in the context of this case, suffice it to note that defendant was very well aware of the fact that he was speaking to a police officer and he was in no way deceived into believing his confession would not be used against him. The police are not required to retain the services of a hostile officer to discourage confessions and I do not find the slightest trace of impropriety in the fact that defendant confessed to a man he knew and trusted.

"To require a police officer to prevent a prisoner from volunteering a statement, or to prevent the officer from divulging statements spontaneously made to him would stretch the comprehension of the average citizen to the breaking point." *(People v Kaye,* 25 NY2d 139, 145, *supra.)*

"No court has yet held that a police officer must take affirmative steps, by gag or otherwise, to prevent a talkative person in custody from making an incriminatory statement within his hearing." *(People v Kaye, supra,* p 145.)

The majority notes that defendant was 17 years old, but ignores his criminal record which indicates that he was not a frightened or intimidated individual. They note he was in

custody for more than 13 hours before the confession, but ignore the fact he had been questioned only briefly the previous night and spoke after sleeping, eating, speaking with his father twice, and being given *Miranda* warnings for at least the third time. Finally, I do not understand the majority when they state that it is doubtful defendant would have confessed if he did not trust Nelson and believe he would act in defendant's best interest. I believe this statement is overly speculative, particularly in that it implies that Nelson used his position of trust to elicit a confession, and this speculation should not be used as a replacement for hard evidence in the record.

If there were sufficient evidence to support a finding that the police sought to circumvent the dictates of *Miranda v Arizona* (384 US 436), I would have no difficulty in voting to reverse this conviction. However, "[t]ruly voluntary confessions constitute a highly trustworthy type of evidence * * * Our decisions must appear to be rational, fair as well as practical, if the courts are to retain the respect of the people." *(People v Kaye, supra,* p 145.) The confession being admissible and there being no other basis appearing in the record warranting a reversal, I respectfully dissent and vote to affirm the judgment of conviction.

MOLLEN, P. J., and HOPKINS, J., concur with TITONE, J.; O'CONNOR, J., dissents and votes to affirm the judgment, with an opinion, in which HAWKINS, J., concurs.

Judgment of the Supreme Court, Westchester County, rendered November 23, 1977, reversed, on the law and the facts, defendant's motion to suppress his confession is granted and a new trial is ordered.