Burke, J.
Defendant appeals from a judgment of the Appellate Division, First Department, which affirmed a judgment of the Supreme Court, New York County, convicting him of two counts of murder in the first degree and sentencing him to life imprisonment on each count.
On this appeal, the courts below have found as a fact that the statements of defendant to the police were voluntary and not the product of custodial interrogation. Since the record supports this affirmed finding of fact, it is binding on this court (People v. Leonti, 18 N Y 2d 384, 389, 390; People v. Yukl, 25 N Y 2d 585). Therefore, only defendant’s contention as to the deprivation of his right to counsel merits discussion. On the day of his arrest, defendant was questioned at length without effect before being taken to the police precinct. When he arrived at the precinct he was placed in a detention pen and was not questioned. When his attorney appeared the defendant was brought to a clerical office and was left alone with the attorney for about 20 minutes. At the end of this 20-minute period, defendant’s attorney came to the door of the office and asked the detective stationed there to ‘ ‘ watch ’ ’ the defendant. The detective entered the room and sat down on a desk facing the defendant. A second detective entered and gave the defendant *158 a sandwich and coffee. The defendant spit his first bite of the sandwich into a wastebasket. The first detective, who had known the defendant prior to this occasion, after an inquiry regarding the refusal to eat said ‘ ‘ Rick, did you ever think it would wind up like this? ” The defendant replied in the words of the detective that "he thought it would, from what he read in the newspapers, that he thought someday he would be arrested for killing those two girls.’’ The detective commented that defendant had made a mess of his life and concluded by remarking "Just what really happened? ” The defendant then said "I don’t know * * * I went to pull a lousy burglary and I wound up killing two girls.’’
After blurting out the damning fact of the perpetration of the murder the defendant proceeded to recount the details of the crime with the detective interjecting a series of questions in the form “ Then what happened, Ricky? ” In this manner, the particular circumstances testified to at a trial were given to the detective and to two other officers who entered the room. In addition, later that same evening, the defendant made incriminating admissions to one of the officers while his attorney was in the same room, some 18 feet away.
Defendant, relying upon our recent decision in People v. Arthur (22 N Y 2d 325) contends that the admissions he made at the station house were inadmissible because they were obtained by means of interrogation in the absence of counsel. We conclude, however, that the statements were legally obtained and that Arthur does not render them inadmissible. The assertion that once an attorney appears there can be no effective waiver unless made "in the presence of the attorney ’ ’ is merely a theoretical statement of the rule. This dogmatic claim is not the New York law (People v. Kaye, 25 N Y 2d 139 [1969]; People v. McKie, 25 N Y 2d 19 [1969]). These cases hold that even though the defendant was in custody (People v. Kaye, supra) and was represented by counsel (People v. Kaye, supra; People v. McKie, supra) an admission given to the police may be admissible. The settled principle is that not every conversation between police and accused is unlawful. In People v. Rodney P. (Anonymous) (21 N Y 2d 1) this court declared that an admission is inadmissible only "when the questioning takes place under circumstances which are likely to affect substan-
*159 tially the individual’s ‘ will to resist and compel him to speak when he would not otherwise do so freely. ’ ” Since that is the standard for suspects without counsel, it follows that representation by counsel should not give a suspect a special privilege to speak unreservedly to the police with unlimited exemption from responsibility for voluntary statements. Instead, the particular circumstances of each case should determine whether the general proposition is apposite. For instance, it was pertinent in People v. Vella (21 N Y 2d 249) as the actions of the police in obtaining a statement from the defendant denied defendant effective assistance of counsel. In any case, therefore, the rule of Arthur is not applicable unless there is evidence of conduct as there was in Vella which would indicate an intention to victimize a defendant or outwit his attorney in order to carry on an inquiry. In this case in contrast to the record in Arthur the initial statement made to the detective placed in the room by the defendant’s lawyer was not the result of “ inquisitorial ” process. The outburst to the detective which exposed Robles’ involvement was not the simple negative response which was all the remark called for, but an impetuous unbosoming of his implication in the crime (People v. Kaye, supra; People v. McKie, supra). Robles was not questioned at all in the station house prior to the arrival of his lawyer; in Arthur, the interrogation was already in progress when the defendant’s attorney arrived. Here, defendant’s lawyer was given prompt access to him and allowed to confer with him in private; in Arthur the attorney’s access to his client was delayed until the police had finished their questioning in clear violation of the rule in People v. Donovan (13 N Y 2d 148). And most significantly, this attorney placed a police officer in a position where defendant’s admissions could be heard. At all relevant times, this attorney was physically present and available to him, to advise him or otherwise assist. The People are not to be charged with violating a defendant’s right to counsel when the opportunity to exercise that right has been fully and effectively extended to a defendant who then chooses to speak rather than remain silent. Clearly, therefore, this defendant was not denied ‘ ‘ the protection that comes from the advice of counsel ’ ’ (People v. Mummiani, 258 N. Y. 394, 400) nor was he subjected to the *160 ‘ ‘ continued incommunicado interrogation ’ ’ which we condemned in People v. Donovan (13 N Y 2d 148, 153, supra).
It would be unreasonable and unrealistic, where the defendant’s lawyer is physically present in the very building and on the very floor (and, at one point, in the very room) where defend- and is being held and where he has conferred with and presumably advised the defendant of his rights, to hold that the defendant’s voluntary admissions of guilt are inadmissible because made in the “ absence ” of counsel. Indeed, in no prior case where the defendant’s attorney was physically present in the immediate vicinity of his client and had had prompt access to his client have we held that admissions made by a defendant during such time are inadmissible.
Accordingly, the admissions were properly received in evidence and, there being no error of law requiring reversal on this record, the judgment of conviction should be affirmed.