THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALLEN HOWARD, Appellant.

First Department, April 27, 1978

## APPEARANCES OF COUNSEL

*Bernard Kleinman* of counsel *(Marsha Edelman,* attorney), for appellant.

*Donna Krone* of counsel *(Robert M. Pitler* with her on the brief; *Robert M. Morgenthau, District Attorney),* for respondent.

## OPINION OF THE COURT

MURPHY, P. J.

On October 6, 1974, four men robbed a Burger King restaurant on West 125th Street in Manhattan. An employee, Barbara Smith, was shot and killed during the robbery. On October 16, 1974, a Detective Capers and other policemen called upon the parents of defendant Howard in the course of their investigation. The parents lived in Apartment 28 in a building located at 2825 Eighth Avenue. The defendant was not in their apartment at that time, but they directed the officers to Apartment 27 across the hallway. A young woman, named Hazzle, admitted the officers to Apartment 27. The defendant was not present but his photographs were found in that apartment. The officers also found men's clothing and 20 pairs of sneakers. Their search eventually uncovered the suspected murder weapon in the Smith homicide.

On October 17, 1974, defendant's attorney arranged for his client's surrender at the District Attorney's office. Afterward, the defendant was taken to Detective Capers' office in the 25th precinct. The escorting policemen informed Capers that the defendant had been advised of his rights at the District Attorney's office and that he was represented by counsel. The detective was also apprised of the fact that the defense attorney did not wish his client to answer any questions or to discuss the homicide in any way. The defendant was then formally arrested and his processing was begun.

During the processing, Detective Capers engaged the defendant in conversation. Accepting Capers' account of the conversation, he mentioned to the defendant that a woman named Perry had telephoned and had claimed that she was the tenant in Apartment 27. The detective stated to the defendant that Perry wanted the "property" returned to her. Capers averred that he had told Perry that the "property" would be returned when the case was concluded. During this entire colloquy with the defendant, Capers never specified the "property" that had been removed from the apartment. The defendant then told the detective that the gun, taken from the apartment, belonged to one Terry Byrd and was used in the Burger King robbery.

Relying upon *People v Robles* (27 NY2d 155), the court denied the motion to suppress. It credited Detective Capers' testimony that he did not seek or expect to elicit a response when he told the defendant that Perry had called to request

the return of the property. The court found that the defendant's response to Capers was, in fact, a volunteered observation that was unsolicited by the detective.

In the *Robles* case, the defendant was being held in a police precinct. The defendant's attorney asked a detective to watch his client temporarily. This detective, who knew Robles, asked him: "Rick, did you ever think it would wind up like this?" The defendant replied, in the words of the detective, that "he thought it would, from what he read in the newspapers, that he thought someday that he would be arrested for killing those two girls." *(People v Robles, supra,* p 158.) In affirming the conviction, the majority found that the detective's remark merely called for a negative response. Robles' outburst was found to be an impetuous unbosoming of his implication in the crime.

At the time the motion to suppress was denied in this proceeding, *Robles* was one of the controlling cases in this area. However, in *People v Hobson* (39 NY2d 479, 490), *Robles* was overruled and the line of cases, following *People v Arthur* (22 NY2d 325) was reaffirmed as the law of this State. In deciding this appeal, we must do so on the law as it presently exists. *(Matter of Temkin v Karagheuzoff,* 34 NY2d 324, 329.) Therefore, we must disregard *Robles* and pay heed to *Arthur* and its progeny. (See *People v Singer,* 44 NY2d 241.)

■ Once an attorney enters a proceeding, the police may not question a defendant in the absence of counsel unless there is an affirmative waiver, in the presence of the attorney, of the defendant's right to counsel *(People v Arthur,* 22 NY2d 325, *supra).* Of course, the rule in the *Arthur* case is not absolute. That rule does not render inadmissible, *inter alia,* a defendant's spontaneously volunteered statement. *(People v Hobson,* 39 NY2d 479, 483, *supra.)* Thus, the Court of Appeals has refused to suppress a completely voluntary confession that was "blurted out" by a defendant to a detective after the entrance of his attorney into a proceeding *(People v Kaye,* 25 NY2d 139).

■ In determining whether defendant Howard's incriminating statement was spontaneously volunteered, this court should not and will not even attempt to speculate as to the Detective Capers' subjective frame of mind in making the initial comment to the defendant. It matters little to the defendant, at this juncture, that the detective made the com-

ment in good faith without any expectation of receiving an inculpatory answer from the defendant. The detective's remark, innocent as it might have been, did precipitate the conversation and did evoke a damaging admission from the defendant. Consequently, for purposes of the motion to suppress, the detective's remark must be objectively viewed as a form of latent interrogation. For that reason, the defendant's incriminating remark to the detective should be suppressed.

The record does contain evidence that the defendant resided in Apartment 27. Likewise, the personalty taken therefrom would suggest that he lived there. Hence, the prosecution may fairly argue that the other evidence in the record already linked the defendant with the subject gun, and that his admission constituted, at most, harmless error. Nonetheless, it should be stressed that only one of the many witnesses at trial was able to make an identification of the defendant. Under that circumstance, the detective's testimony concerning the defendant's incriminating admission may well have been the marginal difference in proof between the defendant's conviction and his acquittal.

Accordingly, the judgment of the Supreme Court, New York County (SANDLER, J. at suppression hearing and trial), rendered February 19, 1976, convicting him, after a jury trial, of two counts of murder in the second degree (Penal Law, § 125.25, subds 1, 3), should be reversed, on the law, the motion to suppress should be granted and this case should be remanded for a new trial.

FEIN, LANE and SULLIVAN, JJ., concur.

Judgment, Supreme Court, New York County, rendered on February 19, 1976, unanimously reversed, on the law, the motion to suppress granted and the case remanded for a new trial.