Jasen, J.
(dissenting). I simply cannot accept the theory, espoused by the majority of this court, that a defendant represented by counsel in a pending criminal proceeding may not be questioned by law enforcement officers even about concededly unrelated matters in the absence of that counsel. To reach such a result, the majority not only misperceives the right of an accused to be represented by counsel, but, also, blindly elevates that right above the compelling interest of the State to investigate and prosecute criminal conduct.
It has long been recognized in this State that law enforcement officers may question a defendant about matters which are unrelated to the criminal proceeding in which the defendant is represented by counsel. (People v Ermo, 47 NY2d 863, 865; People v Coleman, 43 NY2d 222, 226-227; People v Clark, 41 NY2d 612, 615, cert den 434 US 864; People v Hobson, 39 NY2d 479, 483; People v Taylor, 27 NY2d 327, 331-332; People v Hetherington, 27 NY2d 242,. 245.) Contrary to the majority’s assertion, this rational rule of law is hardly inconsistent with the principle that "[o]nce an attorney enters the proceeding, the police may not question the defendant in the absence of counsel unless there is an affirmative waiver, in the presence of the attorney, of the defendant’s right to counsel” (People v Arthur, 22 NY2d 325, 329; People v Hobson, 39 NY2d 479, 483, supra). That no inconsistencies were ever perceived or, indeed, anticipated by this court from the application of these two distinct concepts is apparent from the plain language of Hobson itself, where this court, in unanimously reaffirming the rule of the Arthur case (supra) observed: "[T]he fact that a defendant is represented by counsel in a proceeding unrelated
*176 to the charges under investigation is not sufficient to invoke the [Arthur] rule (see People v Hetherington, 27 NY2d 242, 245, supra; People v Taylor, 27 NY2d 327, 331-332).” (People v Hobson, 39 NY2d, at p 483, supra.) Thus, the majority’s assertion that these rules of law are inconsistent is belied by the unequivocal language of the very case from which they attempt to draw support.
Nor does the rule of law which authorizes the questioning of a defendant as to matters unrelated to the proceeding in which he is represented by an attorney impinge upon the right of an accused to be assisted by counsel. With respect to these unrelated matters, there has yet to be any formal commencement of a criminal proceeding against the defendant to which the right to counsel would attach. (People v Simons, 22 NY2d 533, 539; People v Stanley, 15 NY2d 30, 32-33.) Further, the defendant, after being informed of his constitutional rights, could simply refuse to respond to inquiries posed to him by the law enforcement officers or request that an attorney be provided for him during questioning. A defendant is under no compulsion to answer any questions whatsoever, even as to unrelated matters. Thus, as in this case, where a defendant voluntarily chooses to provide the police with information concerning criminal activitiy which differs from the criminal conduct which gave rise to his arrest and there is absolutely no indication of exploitation of defendant by law enforcement officers, a defendant’s right to counsel is simply not jeopardized.
In my opinion, implementation of the majority’s holding— purportedly predicated on right to counsel principles — will serve only to impede effective law enforcement by depriving police officers of valuable sources of information. For example, pursuant to the majority’s position, law enforcement officers will be precluded from questioning a defendant charged with driving a motor vehicle while intoxicated about a brutal murder unless they first contact the defendant’s attorney representing him on the driving while intoxicated charge and secure his presence at the questioning. This is so even if the defendant was an innocent bystander who witnessed the murder and voluntarily agreed to co-operate with the police. Surely, the right to counsel was never intended to prevent a defendant from voluntarily co-operating with the police concerning matters unrelated to the crime for which he is *177 charged. To hold to the contrary defies both constitutional principles and common sense.
Even accepting, arguendo, the view of the majority that defendant was improperly questioned as to unrelated crimes, there exists an additional, and, indeed, fatal flaw in the rationale adopted by the majority. I had thought it was a well-established principle of law in this State that a spontaneous statement made to police by a defendant who had been advised of his constitutional rights is not rendered inadmissible solely because the defendant was in custody and represented by counsel who was not present when the statement was volunteered. (People v Clark, 41 NY2d 612, 615, supra; People v Hobson, 39 NY2d 479, 483, supra; People v Kaye, 25 NY2d 139, 143-144; Matter of Carlton W., 63 AD2d 830; People v Howard, 62 AD2d 179, 181; People v Talamo, 55 AD2d 506, 507-508.)
Yet, today, the majority holds that the concededly volunteered statement of this convicted defendant was not spontaneous, and, therefore, must be suppressed. Such conclusion is reached by the majority only after reviewing the facts in the record and drawing inferences therefrom. This, we are unable to do. (NY Const, art VI, § 3.)
The issue of whether an inculpatory statement is "spontaneous” and, thus, admissible into evidence despite law enforcement officers’ failure to honor a defendant’s right to counsel is essentially one of fact. (People v Maerling, 46 NY2d 289, 301.) Here, County Court, after considering all the facts and circumstances present, determined that defendant’s inculpatory statement was spontaneous. This finding of spontaneity, being affirmed by the Appellate Division, is beyond our review if there exists any factual support in the record for such determination. (Id.; cf. People v Leonti, 18 NY2d 384, 390.) Stated differently, the sole question before this court is whether, under any view of the facts, it could be concluded that defendant’s statement was not solicited by law enforcement officers.
The testimony adduced at the suppression hearing reveals that defendant was not physically abused or threatened by the police officers. Defendant was questioned only as to matters concerning unrelated crimes after 1:00 p.m. and, further, all questioning of defendant occurred during the daytime and ceased by 4:45 p.m. It was not until a half hour later when defendant, while gazing out the window, uttered the inculpa *178 tory statement. The police officers were not conversing with defendant at this time, as they were completing their paper work with respect to defendant’s arrest.
Given these circumstances, I find more than ample evidence to support County Court’s determination that defendant’s statement was spontaneous. In my opinion, the majority, in holding to the contrary, has transgressed our limited scope of review in these matters and has, in actuality, usurped the authority of County Court and the Appellate Division to pass upon issues of fact. Where reasonable minds may differ as to the inferences to be drawn from a certain set of circumstances, this court "may not interfere with the affirmed findings of that court possessing authority to resolve the issues of fact.” (People v Wharton, 46 NY2d 924, 925.)
Further, as we noted in People v Kaye (25 NY2d 139, 145, supra), "[tjruly voluntary confessions constitúte a highly trustworthy type of evidence * * * No court has yet held that a police officer must take affirmative steps, by gag or otherwise, to prevent a talkative person in custody from making an incriminatory statement within his hearing. * * * To require a police officer to prevent a prisoner from volunteering a statement, or to prevent the officer from divulging statements spontaneously made to him would stretch the comprehension of the average citizen to the breaking point. Our decisions must appear to be rational, fair as well as practical, if the courts are to retain the respect of the people. The admonition of Justice Cardozo is particularly appropriate under these circumstances — '[Jjustice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament.’ (Snyder v. Massachusetts, 291 U. S. 97, 122.)”
Accordingly, I would affirm the order of the Appellate Division.
Judges Jones, Wachtler, Fuchsberg and Meyer concur with Chief Judge Cooke; Judge Jasen dissents and votes to affirm in a separate opinion in which Judge Gabrielli concurs.
Order reversed, judgments and plea of guilty vacated, statement suppressed and case remitted to Nassau County Court for further proceedings on the indictments in accordance with the opinion herein.