OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be reversed, and the case remitted for a new trial.
The record at the suppression hearing is meagre at the critical point. It appears that in the evening of July 19, 1977 defendant voluntarily went to the police station in the Village of Walton at the request of the police. On being given his constitutional preinterrogation warning, defendant and his uncle (who had accompanied him) requested an attorney. None was furnished but defendant was allowed to make a telephone call in an effort to contact an attorney. Defendant and his uncle were then transported 27 miles to the New York police substation in Deposit, New York, where they arrived about 11:00 P.M., at which time the uncle again demanded that defendant The given an attorney and was assured that one would be provided. Defendant was separated from his uncle and taken to the personal office of Inspector Carmody where he remained until 5 or *650 6 o’clock the following morning. Carmody advised defendant. of his preinterrogation rights again and informed him that he was under arrest. Defendant stated that he did not want to talk without talking to an attorney. He was told that he would be given an attorney on his arraignment.
The transcript then becomes very sparse. Carmody testified in conclusory fashion that he did not question defendant who volunteered the oral statements sought to be suppressed. Defendant did not testify at the suppression hearing but submitted his affidavit in which he similarly conclusorily averred that his statement was given in response to questioning by Carmody who ignored his request for counsel. Neither provided any details as to what actually occurred.
The suppression court found that defendant’s statements were “voluntary and not in response to questions put to him by the investigators”, and this finding was affirmed at the Appellate Division.
Because defendant’s statements should have been suppressed his conviction must be reversed. Defendant was in police custody for an extended period of time, and he had several times requested an attorney. There is no finding here, and indeed the record would not have supported one, that defendant’s statements were spontaneous in the literal sense of that word as having been made without apparent external cause, i.e., self-generating. It is not sufficient that the statements were found to have beén voluntary and not in response to express questioning by the police. To entitle these statements to receipt in evidence it must at least be shown that they were in no way the product of an “interrogation environment”, the result of “express questioning or its functional equivalent” (cf. Rhode Island v Innis, 446 US 291, 300-301). No finding was made by the courts below in this regard and it cannot be said as a matter of law that defendant spoke with genuine spontaneity “and not the result of inducement, provocation, encouragement or acquiescence, no matter how subtly employed” (People v Maerling, 46 NY2d 289, 302-303). (Cf. People v Lucas, 53 NY2d 678.)
Defendant also contends that the initial warrantless *651 search of his car at the Walton Police Station on January 20 violated his constitutional rights and that items obtained as a result of that search should have been suppressed. Inasmuch as there was no evidence before the suppression court to support its statement that the keys to defendant’s car had been given to the police (or by whom), there was no predicate for a conclusion of consent and accordingly failure to suppress those items was error.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Order reversed, statements made by defendant and items seized during a search of defendant’s car, suppressed and case remitted to Delaware County Court for a new trial in a memorandum.