■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DARRELL HEPPARD, Also Known as DARRYL HEPPARD, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Lombardo, J.), rendered June 2, 1983, convicting him of manslaughter in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which sought to suppress statements made to law enforcement officials.

Judgment affirmed.

The defendant was convicted of the brutal knife slaying of Benjamin Campbell, a killing that arose out of a dispute over a dice game on a Brooklyn street in July 1981. Some 30 people witnessed the killing, yet despite police efforts, no arrests were made over the next nine months. In April 1982 the police reinterviewed some of the witnesses they had questioned previously, and one of them, a teen-age girl named Evelyn Santiago, identified the defendant as the individual who had

done the stabbing. Santiago told police that she knew the defendant from the neighborhood and that he had since been arrested for a liquor store holdup that occurred subsequent to Campbell's death.

At trial, Detective Ronald Schnatter, who had interviewed Santiago on both occasions, testified on direct that Santiago had not identified anyone when interviewed the day after the killing, but that as a result of his conversation with her in April 1982 he had arrested the defendant for the crime. Although this line of questioning constituted inferential bolstering (see, People v Holt, 67 NY2d 819), no objection by the defendant was interposed, as apparently cross-examination on the point suited his own purposes. On cross-examination, defense counsel, citing Detective Schnatter's report of his first interview with Santiago, elicited testimony that Santiago had initially described Campbell's assailants only as three black males, and had not stated that she knew any of them. In contrast, in her April 1982 statement Santiago gave the defendant's street name to the detective, identifying him as the killer. The defense also entered into evidence at this time the report of another investigating detective embodying an interview with an eyewitness who provided a description of the killer that was inconsistent with the defendant's age and physical build. On redirect, the prosecutor was permitted, over strenuous objection, to enter into evidence Detective Schnatter's police report on the April 1982 interview with Santiago, in which she identified the defendant as the killer. Redacted from the report, however, was the very matter for which it was offered, i.e., that the defendant had been arrested for robbery since the stabbing, and, thus, that the witness was no longer afraid to come forward.

There is no question that the entry into evidence on redirect of the April 1982 redacted police report would constitute improper bolstering of Santiago's credibility by evidence of her pretrial identification of the accused (see, People v Trowbridge, 305 NY 471; People v Williams, 62 AD2d 1026), unless the report was legitimately offered as a prior consistent statement to rebut an inference of a recent fabrication made by Santiago on cross-examination (see, People v Melendez, 55 NY2d 445, 451; People v Davis, 44 NY2d 269, 277-278). Here, the defense counsel's effort to impeach Santiago's credibility through the police witness by developing testimony that she had completely changed her story between July 1981 and April 1982 raised an inference of recent fabrication. The redacted report, however, was a contemporaneous record of

the statement testified to, and was thus not admissible as a prior consistent statement. Nevertheless, because the redacted report, admitted into evidence as a business record, merely restated exactly what had been elicited from Detective Schnatter on cross-examination, it was not of prejudicial significance. Defense counsel opened the door to this testimony by cross-examining the witness concerning statements which bolstered the credibility of another witness and thus invited response. As we have previously stated, where such ordinarily objectionable evidence was "initially elicited by defense counsel on cross-examination in an effort to discredit the in-court identification of [a] witness by showing some inconsistency * * * on the part of the witness" in identifying the defendant, "the testimony allegedly reflecting pretrial * * * identification, even if considered to have been improperly adduced * * * [is] not of such prejudicial significance as to justify the conclusion of reversible error urged by the defendant" (People v Ali, 29 AD2d 779).

We are disturbed, however, by the remarks made by the prosecutor during summation that strongly implied that the defendant had done something to put Santiago in fear of testifying, when in fact no testimony had been adduced that Santiago or anyone in her family had been threatened in any way. It is basic that on summation the prosecutor must stay within " 'the four corners of the evidence' " and not make reference to matters not in evidence (People v Ashwal, 39 NY2d 105, 109, quoting from Williams v Brooklyn El. R. R. Co., 126 NY 96, 103), and we find the departure from that rule exhibited in this case to be highly improper. Defense counsel properly objected to these remarks, and were it not for the prompt curative charges given by the trial court we would be constrained to reverse this conviction (see, People v Gibbs, 59 NY2d 930; People v Cuevas, 99 AD2d 553). However, the prosecutorial misconduct did not rise to the level of depriving the defendant of a fair trial (see, People v Roopchand, 107 AD2d 35, affd 65 NY2d 837). In the absence of further error no such deprivation can be said to have occurred in this case (see, People v Cuevas, supra).

We note, finally, that there is no merit to the defendant's contention that the statement made following his arrest should have been suppressed. The statement comes very close to being innocuous, and even assuming that it can be considered inculpatory, the statement was clearly spontaneous and not the result of impermissible interrogation (see, People v

*Krom,* 61 NY2d 187; *People v Howard,* 60 NY2d 999). Gibbons, J. P., Bracken, Weinstein and Niehoff, JJ., concur.