THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VINCENTE SUAREZ, Appellant.

In the spring of 1983 Detective Samuel Skeete was assigned in an undercover capacity to an investigation involving one Norman Johnson. On May 19, 1983, Detective Skeete visited a social club in Jamaica, Queens, and was told by Johnson that the drugs had not yet been delivered. Detective Skeete returned to the club at a later time and was informed by Johnson that his man was there and that he had the drugs. Detective Skeete told Johnson that the money was outside in his car, left the club to retrieve it, and gave the prearranged signal to his backup team.

The backup team followed him into the club to execute the

search warrant and announced "This is the police. Don't move". At that time, Detective Cestare observed the defendant jump up from a bar stool and throw a plastic bag, containing five smaller bags, to the floor. The bag was recovered as were two others discovered after a search of the defendant. All were found to contain cocaine. The defendant, Johnson, and two other persons in the bar were arrested. Detective Skeete was also arrested in order to maintain his undercover identity. The detective was handcuffed, taken into the bar with the other arrested individuals and seated next to Johnson and the defendant.

Detective Skeete told the defendant several times, in Spanish, that he did not have to answer any questions from the police. The defendant responded, in Spanish, that he was not going to answer any questions. About 15 to 20 minutes later, without any prompting or questioning by the detective or any other police officer, the defendant made the statement "I just came to the club to make this delivery and all this happened to me".

By decision and order dated January 16, 1984, the hearing court denied that branch of the defendant's motion which was to suppress his statement.

We find that suppression of the statement made by defendant to the undercover police officer was properly denied as that statement was spontaneous and not in response to any police interrogation (see, Rhode Is. v Innis, 446 US 291; People v Huffman, 61 NY2d 795; People v Bryant, 59 NY2d 786, rearg dismissed 65 NY2d 638; People v Bonacorsa, 115 AD2d 546, lv denied 67 NY2d 759).

It is undisputed that the defendant was in custody and that he was not given his Miranda warnings prior to making the statement. The question here, however, is whether the defendant was subjected to interrogation, that is, questioning initiated by law enforcement officers. The term interrogation has been held to refer "not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect" (Rhode Is. v Innis, supra, at 301). The test is whether the defendant "spoke with genuine spontaneity, 'and not [as] the result of inducement, provocation, encouragement or acquiescence, no matter how subtly employed' " (People v Stoesser, 53 NY2d 648, 650, quoting People v Maerling, 46 NY2d 289, 302-303; see also, People v

*Lanahan,* 55 NY2d 711, 713; *People v Lynes,* 49 NY2d 286, 295).

We find that the defendant's statement was spontaneous in the literal sense of the word, in that it was self-generating and in no way the result of either express questioning or its functional equivalent *(see, People v Stoesser, supra,* at 650).

The few comments by the detective were declarative in nature and could not reasonably be construed as ones likely to elicit an incriminating response from the defendant *(see, People v Huffman, supra; People v Joyner,* 109 AD2d 753, *lv denied* 65 NY2d 696). Indeed, the result, if any, of those comments would more logically have been the defendant's silence. In any event, the defendant's statement was not an immediate response to the detective's remarks as it occurred 15 to 20 minutes later with no prompting, questioning or other action by the detective. There is nothing in the record to suggest that the detective engaged the defendant in any lengthy conversation or that the other police officers deliberately delayed removing the defendant from the detective's presence so as to exploit the elements of time, place, and proximity. It is well settled that the police are not obligated to take affirmative steps to prevent a talkative person in custody from making an incriminatory statement *(see, People v Kaye,* 25 NY2d 139; *People v Krom,* 61 NY2d 187, 199).

As it cannot be said that the defendant's statement was the product of subtle maneuvering by the police, we find that it was proper to deny suppression of his statement. Kunzeman, Sullivan and Harwood, JJ., concur.

Mangano, J. P., and Thompson, J., dissent and vote to reverse the judgment appealed from, on the law, vacate the plea, grant that branch of the defendant's motion which was to suppress a certain statement made by him to the police, and remit the matter to the Supreme Court, Queens County, for further proceedings, with the following memorandum: The defendant's conviction of the crime of criminal possession of a controlled substance in the second degree arose out of a drug "bust" which occurred at a social club on Jamaica Avenue, Queens, on May 19, 1983.

After ascertaining that drugs were present in the club, an undercover officer gave a prearranged signal to his backup team which entered the club in order to execute a search warrant and arrest a named individual, one Norman Johnson, for the sale of cocaine. Upon entering the club, the police observed the defendant jump up from a bar stool and throw a

plastic bag to the floor under the bar. The bag appeared to be cocaine and the defendant was arrested. A search of the defendant's person disclosed another plastic bag containing cocaine. The police members of the backup team did not advise the defendant of his rights because the defendant only spoke Spanish. The undercover officer, who did speak Spanish, was also taken into custody and handcuffed, ostensibly to maintain the integrity of the undercover operation. In addition, the undercover officer was taken to the bar in the club and seated next to the defendant. The undercover officer started to speak in Spanish and when the police asked his name he told them that he only spoke Spanish. The police then started to speak to the defendant, at which time the undercover officer, while continuing to maintain his pose as a drug buyer, told the defendant, in Spanish, "You don't have to answer any questions from them". The defendant told the undercover officer that he was not going to answer any questions. The undercover officer also stated to the defendant, "I'm not going to say anything. I don't answer any questions until I get a lawyer". The undercover officer repeated his advice to the defendant on several occasions, and he and the defendant also had a short conversation wherein the defendant mentioned that he was married and unemployed. About 15 or 20 minutes after the defendant was advised by the undercover officer that he did not have to answer questions from the police, the defendant stated to the undercover officer: "I just came to the club to make this delivery and all this happened to me".

In denying that branch of the defendant's motion which was to suppress this statement, Criminal Term held that (1) although the defendant was in custody at the time he gave his statement, he was not the subject of police interrogation, and (2) the defendant's statement was spontaneous and not the result of police inducement.

The defendant's statement should have been suppressed.

The Supreme Court of the United States has held: *"Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police * * * that the police should know are reasonably likely to elicit an incriminating response from the suspect" *(Rhode Is. v Innis,* 446 US 291, 300-301). Our own Court of Appeals has stated in *People v Lynes* (49 NY2d 286, 295): "[U]sing an objective stand, the

Trial Judge must determine whether the defendant's statement can be said to have been triggered by police conduct which should reasonably have been anticipated to evoke a declaration from the defendant".

In the case at bar, the undercover officer who spoke Spanish, as did the defendant, was put in handcuffs, and, even more importantly, was seated by his backup team, after the arrest, next to the defendant. The undercover officer (1) assumed the role of a drug buyer who was involved in the same predicament as the defendant, and (2) initiated a conversation with the defendant, and, during the course of it, attempted on several occasions to gain his trust by advising the defendant not to speak to the police, claiming that was his own practice. Under the circumstances, the conduct of the undercover officer was clearly calculated to evoke a response from the defendant, and in the absence of proper *Miranda* warnings, the defendant's statement should have been suppressed *(cf., United States v Henry,* 447 US 264, 270-271).