■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NICHOLAS FACCIOLO, Appellant. [734 NYS2d 179] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (Marrus, J.), rendered January 11, 1999, convicting him of manslaughter in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the

denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement authorities.

Ordered that the judgment is reversed, on the law, that branch of the omnibus motion which was to suppress the defendant's statements to law enforcement authorities is granted, and a new trial is ordered.

On the afternoon of May 25, 1990, two men were shot inside a Brooklyn produce store. One victim was struck in the chest and died minutes after the shooting. The second victim was shot at close range in the elbow and recovered from his injury. The defendant was inside the produce store when the shots were fired. None of the others present admitted to seeing the shooter, but the defendant was considered a suspect. Immediately after the shooting, the defendant abandoned his apartment and fled New York. Eight years later, on April 9, 1998, members of the cold case squad apprehended the defendant in a pool hall in Queens, and placed him under arrest.

The defendant was then brought to a police station. Upon being advised by a detective of his *Miranda* rights (*see, Miranda v Arizona,* 384 US 436), the defendant stated that he did not want to say anything, and that he wanted to speak to his attorney. About 30 minutes later, the defendant's attorney telephoned the police station and advised the detective that he did not want the defendant to be questioned. Although the detective did not question the defendant about the shooting, while obtaining pedigree information he asked him about where he had gone after the shooting. During the course of the ensuing conversation, which took place in an interview room with six police officers present, the defendant stated that after the shooting he ran home, took some clothes, and did not return. He told the officers that he had thought of turning himself in, that the eight years after the shooting had been difficult, and that he had gone "from driving Rolls Royces to not knowing where his next meal was * * * coming from" and supporting himself by working in pool halls. The defendant also stated that he had not seen members of his family for years, even though he had been close to them. There were breaks between these statements, and it appeared to one of the officers present that the defendant was "pondering his past [and] his future." The Supreme Court suppressed some of these statements on the ground that they were the product of a custodial interrogation which took place after the defendant stated that he wanted to speak to his attorney. However, the Supreme Court found that the defendant's statements that he had

thought of turning himself in, that the eight years after the shooting had been difficult, and that he had not seen members of his family for years, even though he had been close to them, were admissible because they were not made in direct response to questioning.

On appeal, the defendant contends that the Supreme Court should have suppressed all of his statements to the police because they were the product of a custodial interrogation following his assertion of the right to counsel. We agree.

Once an individual in custody requests the assistance of counsel, he or she may not be questioned in the absence of counsel (see, People v Davis, 75 NY2d 517, 521). A limited exception to this rule is made for spontaneous statements, which may be admitted into evidence upon a showing that they were in no way the product of an " 'interrogation environment,' " or the result of " 'express questioning or its functional equivalent' " (People v Campney, 94 NY2d 307, 314 [internal quotation marks omitted], quoting People v Stoesser, 53 NY2d 648, 650). The spontaneity of the statement must be "genuine and not the result of inducement, provocation, encouragement or acquiescence, no matter how subtly employed" (People v Maerling, 46 NY2d 289, 302-303). Here, all of the defendant's statements were made after the detective introduced the topic of how he had lived as a fugitive by asking him questions about where he had gone after the shooting. Thus, none of the defendant's statements relating to the difficulties he had encountered as a fugitive were genuinely spontaneous, and they should not have been admitted into evidence. Furthermore, the erroneous admission of these statements was not harmless, since the prosecution relied upon the statements to show consciousness of guilt, and the circumstantial evidence linking the defendant to the shooting was not overwhelming.

In addition, reversal is warranted because the prosecutor repeatedly argued during his summation that the four prosecution witnesses who were inside the produce store when the shooting occurred were reluctant to testify against the defendant, and implied that he had threatened them. These comments were not within the "four corners of the evidence" (People v Ashwal, 39 NY2d 105, 109), and were highly prejudicial (see, People v Heppard, 121 AD2d 466, 468; People v Norton, 164 AD2d 343, affd 79 NY2d 808; People v Rivera, 160 AD2d 267; People v Lozada, 104 AD2d 663, 664-665). Although the defendant's challenge to these comments was not preserved for appellate review, we reach it in the exercise of our interest of justice jurisdiction (see, CPL 470.15 [6] [a]; People v Walters, 251 AD2d 433).

In light of our determination, we need not reach the defendant's remaining contention. Krausman, J. P., S. Miller, Schmidt and Crane, JJ., concur.