People v Bowen (2021 NY Slip Op 03685)





People v Bowen


2021 NY Slip Op 03685


Decided on June 11, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 11, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., LINDLEY, CURRAN, BANNISTER, AND DEJOSEPH, JJ.


138 KA 18-00265

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
SHAUN BOWEN, DEFENDANT-APPELLANT. 






FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (PHILIP ROTHSCHILD OF COUNSEL), FOR DEFENDANT-APPELLANT. 
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (KENNETH H. TYLER, JR., OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Onondaga County Court (Robert L. Bauer, A.J.), rendered December 13, 2017. The judgment convicted defendant upon a jury verdict of murder in the second degree, arson in the first degree and criminal mischief in the third degree. 
It is hereby ORDERED that the judgment so appealed from is affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of murder in the second degree (Penal Law § 125.25 [3]), arson in the first degree (§ 150.20 [1] [a] [i]), and criminal mischief in the third degree (§ 145.05 [2]). Defendant's conviction stems from his conduct in placing a propane tank inside an oven at a 12-room boarding house, which led to a fire and caused the death of one of the tenants (decedent). Defendant, a prior tenant of the house, was visiting his former housemates and became angry after arguing with some of them, leading to his retaliatory action.
County Court (Aloi, J.) held a Huntley hearing and determined that defendant invoked his right to counsel during a videotaped interview with the police but that several inculpatory statements made by defendant thereafter were admissible because they were spontaneously made. Those statements were made by defendant after the interrogation ceased and while a detective was sitting next to him, completing the arrest paperwork. After the detective asked him certain pedigree questions, defendant asked "How's Annie doing?," referring to decedent's wife. The detective replied that she was "hurt" and said that she "lost the person she loved the most in life." The detective then asked defendant if he wanted another coffee or soda and, after defendant responded that he would like another cup of coffee, he started crying. The detective whispered "good response" and told him "that's remorse." There was a brief interruption when another detective opened the door to the interview room and discussed lunch plans with the first detective, and the first detective then asked defendant if he was hungry. Defendant responded "yeah," and then stated "it wasn't supposed to happen like that" and that he "didn't mean for any of that to happen" (first statement). After the detective responded "I understand," defendant stated "I just wanted to prank 'em just like jig 'em" (second statement). After the detective responded with several statements including that "remorse is what we wanted to see" and that the police did not think that defendant's intentions were to kill anyone, defendant said "I should've just stuck around. Maybe I coulda [sic] done something" (third statement).
We reject defendant's contention that reversal is required because the three statements outlined above should have been suppressed. It is well settled that "statements made by a defendant who has invoked the right to counsel may nevertheless be admissible at trial if they were made spontaneously . . . [and were not] the result of express questioning or its functional equivalent" (People v Harris, 57 NY2d 335, 342 [1982], cert denied 460 US 1047 [1983] [internal quotation marks omitted]; see People v Rivers, 56 NY2d 476, 479-480 [1982], rearg denied 57 NY2d 775 [1982]). We reject defendant's contention that the detective provoked [*2]defendant's first and second statements when the detective made his remark about remorse (see People v Huffman, 61 NY2d 795, 797 [1984]). Rather, those statements were triggered by defendant's own thoughts about "Annie," who was one of his former housemates. After the detective made his remark about remorse, there was a brief interruption by another detective and then the first detective effectively changed the subject when he asked defendant if he was hungry. Yet defendant, still obviously troubled about "Annie," spontaneously made the first and second statements. We therefore conclude that defendant's first and second statements were not "triggered by police conduct which should reasonably have been anticipated to evoke a declaration from . . . defendant" (People v Lynes, 49 NY2d 286, 295 [1980]; see People v Watson, 90 AD3d 1666, 1666-1667 [4th Dept 2011], lv denied 19 NY3d 868 [2012]; People v Fuller, 70 AD3d 1391, 1391-1392 [4th Dept 2010], lv denied 14 NY3d 840 [2010]).
With respect to the third statement, we agree with defendant that it was not spontaneous because it was made in response to the functional equivalent of express questioning by the detective (see generally Harris, 57 NY2d at 342). We conclude, however, that the error in admitting the third statement was harmless (see People v Kaba, 166 AD3d 1566, 1567 [4th Dept 2018], lv denied 32 NY3d 1206 [2019]). The proof of guilt, including defendant's first and second statements detailed above, was overwhelming, and there was no reasonable possibility that the error contributed to the conviction (see People v Paulman, 5 NY3d 122, 134 [2005]; see generally People v Crimmins, 36 NY2d 230, 237 [1975]).
Defendant next contends that the court (Bauer, A.J.) erred in allowing the jury to hear certain comments made by the first detective during the videotaped interview with defendant inasmuch as those comments constituted improper opinion evidence. We reject that contention inasmuch as the detective's statements were not unduly prejudicial and were required to place defendant's statements in context (cf. People v Smith, 126 AD3d 1528, 1529 [4th Dept 2015], lv denied 26 NY3d 1150 [2016]). In any event, any error in admitting those statements was harmless (see People v Sommerville, 30 AD3d 1093, 1094 [4th Dept 2006]). Defendant had already admitted his guilt by that point in the interview, and we thus conclude that there is no significant probability that the jury would have acquitted defendant had it not been for the allegedly erroneous admission of the detective's statements (see Crimmins, 36 NY2d at 241-242).
Finally, the sentence is not unduly harsh or severe.
All concur except Lindley, J., who dissents and votes to reverse in accordance with the following memorandum: I respectfully dissent and conclude that County Court (Aloi, J.) erred in refusing to suppress all of the statements defendant made after he unequivocally invoked the right to counsel. I further conclude that the constitutional error cannot be deemed harmless (see People v Crimmins, 36 NY2d 230, 237 [1975]). I would therefore reverse the judgment, grant that part of the omnibus motion that sought suppression of any statements made by defendant after he invoked the right to counsel and grant a new trial.
After fire engulfed a rooming house in the City of Syracuse, one of the tenants (decedent) died in the blaze. Detectives spoke to several tenants of the property, and they identified defendant, a former tenant of the rooming house, as a possible suspect. Although he was interviewed twice by detectives, defendant challenges only those statements that were made after he invoked his right to counsel during the second interview.
"The State constitutional right to counsel is a 'cherished principle' . . . , worthy of the 'highest degree of [judicial] vigilance' " (People v Ramos, 99 NY2d 27, 32 [2002]). Here, as in People v Harris (57 NY2d 335, 342 [1982], cert denied 460 US 1047 [1983]), it is clear that defendant invoked his right to counsel and that no further questioning was permitted unless defendant waived his right to counsel in the presence of defense counsel. One recognized exception to that rule is where a defendant's subsequent statements are spontaneous and not the product of express interrogation or its functional equivalent (see id.). The reason for that exception is because law enforcement officers have no obligation "to prevent a talkative person in custody from making an incriminating statement" (People v Rivers, 56 NY2d 476, 479 [1982], rearg denied 57 NY2d 775 [1982]).
Here, after defendant unequivocally invoked his right to counsel and after arrest [*3]paperwork was completed, defendant asked how decedent's wife was doing. I agree with the People and the majority that defendant's initial inquiry into the well-being of decedent's wife was a spontaneous question not subject to suppression. The interviewing detective then gave a lengthy response, which concluded with the statement that "every day she says uh you know she's lost the person she loved the most in life." Defendant thereafter started to cry, whereupon the interviewing detective stated, "Good response. That's remorse Bud that's good. I, I know you're friends with these people. You've known them for a long time." Shortly after the detective's statement and a brief interruption by another detective, defendant said, "It wasn't supposed to happen like that you know they were supposed to go with . . . I don't know. I didn't mean for any of that to happen" (first statement). The interviewing detective told defendant that he understood, at which time defendant continued, "I just wanted to prank 'em just like jig 'em" (second statement). At that point, the detective again told defendant that he understood and that remorse was what the detectives wanted to see. The detective told defendant that "none of us thought that uh obviously when we're talking to you we wanted to know what was going through your mind but neither one of us thought that uh your intentions were to kill somebody." Following that last statement, defendant stated, "Why didn't they just get out? I should've just stuck around. Maybe I coulda done something" (third statement).
Defendant sought suppression of the three incriminating statements, but the court refused to suppress any of them, determining that the challenged statements were "clearly volunteered in that . . . defendant spoke with genuine spontaneity and that he was neither induced nor provoked by [the interviewing detective] into making such statements." The majority agrees with the People that the court did not err in refusing to suppress the first two statements and that any error in refusing to suppress the third statement is harmless. I respectfully disagree and conclude that all of those statements should have been suppressed.
"In order for [the] statements to be characterized as spontaneous, it must be shown that they were in no way the product of an interrogation environment, the result of express questioning or its functional equivalent" (Harris, 57 NY2d at 342 [internal quotation marks omitted]; see People v Stoesser, 53 NY2d 648, 650 [1981]; see also Rivers, 56 NY2d at 480). We are thus required to determine whether there were "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should [have known were] reasonably likely to elicit an incriminating response" (Rhode Island v Innis, 446 US 291, 301 [1980]; see People v Ferro, 63 NY2d 316, 322 [1984], cert denied 472 US 1007 [1985]; People v Allnutt, 148 AD2d 993, 994 [4th Dept 1989], lv denied 74 NY2d 736 [1989]).
According to the Court of Appeals, "[t]he test in such situations [is] . . . whether the defendant's statement can be said to have been triggered by police conduct which should reasonably have been anticipated to evoke a declaration from the defendant" (People v Lynes, 49 NY2d 286, 295 [1980]). "[C]onsidering the totality of the circumstances leading up to the subject statement[s]" in this case (People v Stephans, 168 AD3d 990, 995 [2d Dept 2019]), including the interviewing detective's initial failure to scrupulously honor defendant's first requests for an attorney by asking him why he wanted an attorney and whether he needed an attorney to determine whether he should confess (cf. Harris, 57 NY2d at 342), I cannot conclude that "defendant spoke with genuine spontaneity 'and not [as] the result of inducement, provocation, encouragement or acquiescence, no matter how subtly employed' " (Stoesser, 53 NY2d at 650, quoting People v Maerling, 46 NY2d 289, 302-303 [1978]).
Before defendant invoked his right to counsel, the interviewing detective implored defendant to "do the right thing," and informed him that a showing of remorse would be a significant factor in the charges and how he was viewed by a jury. I thus conclude that the interviewing detective's subsequent comments concerning remorse and friendship, made after defendant invoked his right to counsel, related back to the detective's prior requests for defendant to show remorse and do the right thing. In my view, "the only possible object of [the detective's comments] [was] to elicit a statement from [defendant]" (Ferro, 63 NY2d at 323-324). In any event, even if the detective's subsequent references to remorse were innocently made, I conclude that they "did precipitate the conversation and did evoke a damaging admission from . . . defendant" (People v Howard, 62 AD2d 179, 182 [1st Dept 1978], affd for the reasons stated 47 NY2d 988 [1979]). I thus conclude that all of defendant's incriminating statements following his invocation of the right to counsel should have been suppressed. Inasmuch as there is a reasonable possibility that the erroneous admission of defendant's inculpatory statements [*4]contributed to the verdict, the error in refusing to suppress all of those statements cannot be considered harmless, and reversal is required (see Crimmins, 36 NY2d at 237).
Based on my determination, there is no need to address the remainder of defendant's contentions, but I would concur with the majority's resolution of those contentions.
Entered: June 11, 2021
Mark W. Bennett
Clerk of the Court